# EXHIBIT A

## MUTUAL CONFIDENTIALITY AGREEMENT

This mutual confidentiality agreement ("**Agreement**") is made by Zebra Enterprise Solutions Corp. with offices in San Jose, California ("**ZES**"), and the entity executing this Agreement as "**Company**", who agree as follows:

**PURPOSE**

Company and ZES wish to explore the possibility of a collaborative business relationship with one another. As part of that process, they may provide to one another certain of their respective proprietary information. The parties wish to set forth in writing their agreement concerning the treatment of such proprietary information.

**AGREEMENT**

1. **Definition.** "Confidential Information" means information (including formulae, patterns, compilations, programs, devices, methods, techniques and processes) provided by either party to the other, that derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and includes, without limitation, (a) each party's software and other products and works in progress (including computer software, manuals, and all other materials associated with the use of the software) as well as all intellectual property rights associated therewith (including associated with functionality, programming techniques, interface elements, data manipulation and management methods and formulae represented in, or demonstrated by the use of, such software products); and (b) information relating to each party's business affairs, internal operations, personnel, financial matters, technology, research and development, product plans or offerings, markets, sales opportunities, or know-how; and (c) any of the foregoing information belonging to an affiliate of ZES that ZES may disclose to Company. For purposes hereunder, an affiliate of ZES means any entity, whether incorporated or not, that is controlled by or is under common control with ZES or Zebra Technologies Corporation; and where "control" means the ability, either directly or indirectly, to direct the affairs of another, whether by ownership, contract, or otherwise.

2. **Exceptions.** For purposes of this Agreement, "Disclosing Party" means the party that provided its Confidential Information to the other party ("Receiving Party"). The obligations in paragraph 3 below will not apply to, and Confidential Information as defined above will not include, information that (a) is or becomes publicly available, except by the wrongful disclosure hereunder by the Receiving Party; (b) was rightfully in the Receiving Party's possession prior to receipt of the same from the Disclosing Party; (c) was received by the Receiving Party from a third party who was not known by the Receiving Party to be under any obligation of confidentiality with respect to such information; (d) the Receiving Party can prove was independently developed by it without any reference, direct or indirect, to Confidential Information of the Disclosing Party; or (e) is approved in writing for release by the Disclosing Party.

3. **Obligations Re Confidentiality And Limited Use.** The Receiving Party agrees that it will: (a) maintain and preserve the confidentiality of the Disclosing Party's Confidential Information including, without limitation, using at least the same degree of care (and, in any event, not less than a reasonable degree of care) to preserve the confidentiality of such Confidential Information as it takes to preserve the confidentiality of its own Confidential Information; (b) disclose the Disclosing Party's Confidential Information to only those of its employees, independent contractors and/or advisors who are bound by written agreement or professional obligation to preserve the confidentiality of such Confidential Information upon terms substantially in conformance with the terms of this Agreement; and (c) use the Disclosing Party's Confidential Information solely in connection with evaluating whether to engage in a collaborative business relationship with the Disclosing Party and in pursuit of the purposes of any such relationship. The Receiving Party shall not otherwise use or exploit the Disclosing Party's Confidential Information for its own benefit or purposes, or for the benefit or purposes of any third party. The Receiving Party shall notify the Disclosing Party immediately upon discovery of any unauthorized use or disclosure of the Disclosing Party's Confidential Information or any other breach of this paragraph 3, and shall reasonably assist the Disclosing Party to regain possession of its Confidential Information and prevent any further unauthorized use.

4. **Required Legal Disclosure.** Notwithstanding paragraph 3 above, the Receiving Party may disclose the Disclosing Party's Confidential Information to the extent required by any applicable law, regulation or court; provided, however, that the Receiving Party will notify the Disclosing Party promptly after becoming aware of its obligation to make such disclosure and will permit the Disclosing Party to seek to challenge or limit such required disclosure. In the event of any required disclosure under this paragraph 4, the Receiving Party shall furnish only that portion of the Disclosing Party's Confidential Information that is legally required.

5. **Term And Termination; Return.** This Agreement shall terminate upon the conclusion of the parties' proposed collaborative business relationship, unless sooner terminated by either party upon thirty (30) days advance written notice. The obligations of confidentiality and limited use under this Agreement shall survive for a period of five (5) years from the date of such termination. Upon the written request of the Disclosing Party at any time, the Receiving Party shall promptly return all Confidential Information of the Disclosing Party together with all copies thereof, whether in written, electronic or other form, or, at the election of the Disclosing Party, destroy all such Confidential Information of the Disclosing Party, and deliver a written certification to the Disclosing Party signed by an authorized representative that all such Confidential Information has been returned or destroyed, as applicable.

6. **Ownership.** Each party shall retain ownership of all right, title and interest in and to its Confidential Information, and



EHE 2/17/2012
DJA 2/17/12

nothing in this Agreement shall be construed to convey to the Receiving Party any right, title, license or interest in any Confidential Information provided by the Disclosing Party.

7. **No Warranty. ALL CONFIDENTIAL INFORMATION IS PROVIDED TO THE RECEIVING PARTY "AS IS" AND WITHOUT ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, ACCURACY, COMPLETENESS OR SUFFICIENCY.**

8. **No Future Obligations**. Nothing in this Agreement shall be construed as creating any obligation on the part of either party to enter into a business relationship with the other party, or as creating any partnership or any other legal entity between the parties.

9. **Enforcement**. Each party agrees that money damages would be inadequate compensation for breach of this Agreement. Accordingly, each party hereby consents in advance to the entry of equitable relief by a court of competent jurisdiction (including an injunction that enjoins the breaching party from disclosing or using the Disclosing Party's Confidential Information) to enforce the terms hereof. Such remedies are in addition to any other remedies available at law or equity.

10. **Governing Law**. This Agreement will be governed by the substantive laws of the State of California as such laws apply to contracts between California residents entered into and performed entirely within California. In connection with any dispute, the prevailing party will be entitled to its reasonable attorneys' fees and costs, including expert witness fees.

11. **Successors And Assigns**. Neither party may assign this Agreement or any benefit or obligation hereunder, in whole or in part, without the prior written consent of the other party, except that it may, upon written notice to the other party, be assigned (a) to a parent, subsidiary or affiliate company (excluding any competitor of the Disclosing Party), or (b) to a successor in interest through merger, acquisition, change of control or reorganization, or acquisition or sale of substantially all assets.

12. **Severability**. If any provision of this Agreement shall be held invalid or unenforceable for any reason, in whole or in part, then the remaining provisions shall remain valid and enforceable to the maximum extent permitted by applicable law.

13. **Miscellaneous**. This Agreement sets forth the entire agreement of the parties concerning the subject matter hereof and supersedes all prior agreements, understandings and negotiations between the parties regarding such subject matter. All amendments or exceptions to this Agreement must be in writing signed by both parties. This Agreement may be executed in one or more counterparts, all of which, taken together, shall constitute one and the same instrument. Each party agrees that facsimile signatures will have the same legal effect as original signatures and may be used as evidence of execution.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the latest date set forth below.

| ZEBRA ENTERPRISE SOLUTIONS CORP: | | COMPANY: | Lynx System Developers, Inc |
|---|---|---|---|
| Signed: | David J. Austerlade | Signed: | Edward G Evansen |
| Name: | David J. Austerlade | Name: | Edward G Evansen |
| Title: | Contracts Negotiator | Title: | Chief Executive Officer |
| Address: | 2940 North 1st St. | Address: | 179 Ward Hill Ave |
| | San Jose, CA 95134 | | Haverhill, MA 01835 |
| Telephone: | (408) 473-8535 | Telephone: | 978-556-9780 |
| Fax: | (408) 473-8501 | Fax: | 978-556-9781 |
| Date: | 2/17/12 | Date: | 2/17/2012 |