## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LYNX SYSTEM DEVELOPERS, INC. and ISOLYNX, LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | **Civil Action No. 1:15-cv-12297-GAO** |
| v. | ) ) | Leave to File Excess Pages Granted August 17, 2015 |
| ZEBRA ENTERPRISE SOLUTIONS CORPORATION, ZEBRA TECHNOLOGIES CORPORATION, and ZIH CORP., | ) ) ) ) | ORAL ARGUMENT REQUESTED |
| Defendants, | ) ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>
## <u>(FILED UNDER SEAL)</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS AS ALLEGED IN COMPLAINT ................... 3

      A.    Zebra's Innovative RFID Technologies, and Lynx's Need for Them ................... 3

      B.    The IsoLynx System and Zebra's Real-Time Player Tracking Solutions ............. 3

      C.    Zebra's Patents and MotionWorks® Tracking System ......................................... 8

      D.    Choice of Law and Venue Provisions in the Zebra-Lynx Agreements ................. 9

      E.    Lynx's Complaint and Asserted Subject Matter Jurisdiction ............................... 9

III.  ARGUMENT ................................................................................................................ 10

      A.    Lynx's State Law Claims (Counts I-IX) Should Be Dismissed for Lack of
            Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) ...................... 10

      B.    Even if the Court Exercises Supplemental Jurisdiction over Lynx's State
            Law Claims, Lynx's Complaint Should Be Dismissed for Failure to State a
            Claim Pursuant To Fed. R. Civ. P. 12(b)(6) ....................................................... 14

            1.    California law applies to Lynx's state law claims. .................................. 15

            2.    Under California trade secrets law, Counts V–IX are preempted. .......... 18

            3.    Lynx's trade secret claim (Count I) should be dismissed for failure
                  to state a claim. ...................................................................................... 20

            4.    Lynx's intentional interference with contract claim (Count III)
                  should be dismissed for failure to state a claim. .................................... 21

            5.    Lynx's fraud claim (Count IV) should be dismissed for failure to
                  state a claim............................................................................................ 22

            6.    Lynx's breach of fiduciary duty claim (Count V) should be
                  dismissed for failure to state a claim....................................................... 24

            7.    Lynx's unfair competition claim (Count VI) should be dismissed
                  for failure to state a claim. ...................................................................... 26

            8.    Lynx's unjust enrichment claim (Count VII) should be dismissed
                  for failure to state a claim. ...................................................................... 26

9.      Lynx's conversion claim (Count VIII) should be dismissed for
        failure to state a claim. ............................................................................ 27

10.     Lynx's interference with prospective economic advantage claim
        (Count IX) should be dismissed for failure to state a claim. .................... 27

11.     Lynx's correction of inventorship claim (Count X) should be
        dismissed for failure to state a claim. ........................................................ 28

12.     Lynx's inequitable conduct claim (Count XI) should be dismissed
        for failure to state a claim. ........................................................................ 29

13.     Lynx's patent ownership claim (Count XII) should be dismissed
        for failure to state a claim. ........................................................................ 30

IV.   CONCLUSION .............................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
   732 F.3d 77 (1st Cir. 2013) ...................................................................... 26

*Air Tech. Corp. v. Gen. Elec. Co.*,
   199 N.E. 2d 538 (Mass. 1964) ................................................................ 25

*Arbor Networks, Inc. v. Ronca,*
   No. 12–11322–FDS, 2012 WL 5610835 (D. Mass. Nov. 14, 2012)........................................ 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 14

*Blake v. Prof'l Coin Grading Serv*,
   898 F. Supp. 2d 365 (D. Mass. 2012) ...................................................... 27

*C & J Mgmt. Corp. v. Anderson*,
   707 F. Supp. 2d 858 (S.D. Iowa 2009) .................................................... 14

*Cambridge Internet Solutions, Inc. v. Avicon Group*,
   No. 99–1841, 1999 WL 959673 (Mass. Sup. Ct. Sept. 21, 1999)........................................ 20, 21

*CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*,
   57 F. Supp. 3d 118 (D. Mass. 2014) ....................................................... 29

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998)..................................................................... 24

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*,
   217 F.3d 33 (1st Cir. 2000) ...................................................................... 26

*Demoulas v. Demoulas Super Markets, Inc.*,
   No. 902927B, 1993 WL 818844 (Mass. Super. Ct. Nov. 29, 1993) ........................................ 24

*DeRose v. Putnam Mgmt. Co., Inc.*,
   496 N.E. 2d 428 (Mass. 1986) ................................................................ 22

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968)................................................................... 20

*Diomed, Inc. v. Vascular Solutions, Inc.*,
   417 F. Supp. 2d 137 (D. Mass. 2006) ................................................................. 15

*EchoMail, Inc. v. Am. Express Co.*,
   529 F. Supp. 2d 140 (D. Mass. 2007) ................................................................. 18

*Ethicon v. U.S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) .......................................................................... 29

*Fed. Home Loan Bank of Boston v. Ally Fin., Inc.*,
   No. 11-10952-GAO, 2013 WL 5466628 (D. Mass. Sept. 30, 2013) ........................ 15

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   No. 08CV1992–MMA(POR), 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) ............ 18, 19

*Garcia v. Superior Court*,
   50 Cal. 3d 728 (1990) ........................................................................................ 24

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
   No. CIV 10–1020 JB/LFG, 2012 WL 1684573 (D.N.M. May 12, 2012) ................. 13

*Gorbey ex rel. Maddox v. Am. Journal of Obstetrics & Gynecology*,
   849 F. Supp. 2d 162 (D. Mass. 2012) ................................................................. 26

*Guest-Tek Interactive Entm't Inc. v. Pullen*,
   731 F. Supp. 2d 80 (D. Mass. 2010) ................................................................... 28

*Hills Transp. Co. v. Sw. Forest Indus., Inc.*,
   266 Cal. App. 2d 702 (1968) .............................................................................. 22

*IB Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) ............................................................................. 27

*In re Celexa*,
   751 F. Supp. 2d at 289 ....................................................................................... 14

*Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC*
   929 F. Supp. 2d 597 (W.D. La. 2013) ................................................................. 12

*Jardin v. DATAllegro, Inc.*,
   No. 10–CV–2552–IEG (WVG), 2011 WL 3300152 (S.D. Cal. Jul. 29, 2011) ......... 18, 30

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009) ............................................................................. 15

*Keros v. Mass. Mut. Life Ins. Co.*,
   958 F. Supp. 2d 306 (D. Mass. 2013) ................................................................. 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ........................................................................................... 28

*Krauser v. BioHorizons, Inc.*,
  753 F.3d 1263 (Fed. Cir. 2014) ................................................................................ 30

*Langadinos v. Am. Airlines, Inc.*,
  199 F.3d 68 (1st Cir. 2000) ...................................................................................... 14

*MCV, Inc. v. King-Seeley Thermos Co.*,
  870 F.2d 1568 (Fed. Cir. 1989) ................................................................................ 29

*MedImmune, Inc. v. Genentech, Inc.*,
  427 F.3d 958 (Fed. Cir. 2005) .................................................................................. 30

*Meehan v. Shaughnessy*,
  535 N.E. 2d 1255 (Mass. 1989) ................................................................................ 25

*Miller v. Nat'l Am. Life Ins. Co.*,
  54 Cal. App. 3d 331 (1976) ...................................................................................... 22

*Moving and Storage, Inc. v. Panayotov*,
  No. 12–12262–GAO, 2014 WL 949830 (D. Mass. Mar. 12, 2014) ......................... 28

*Okmyansky v. Herbalife Int'l of Am., Inc.*,
  415 F.3d 154 (1st Cir. 2005) .................................................................................... 15

*Ophthalmic Research Assocs., Inc.*,
  No. CIV.A. 12-11371-RWZ, 2013 WL 2247584 (D. Mass. May 22, 2013) .................... passim

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) ........................................................................................ 21, 22

*Patent Category Grp. v. Time to Play Corp.*,
  No. 2:07-cv-06479-ABC-SS, Dkt. 64 (C.D. Cal. Mar. 5, 2008) ............................... 12

*Pellegrini v. Weiss*,
  165 Cal. App. 4th 515 (2008) ................................................................................... 24

*Perryman v. Dorman*,
  No. CV–10–1800–PHX-FJM, 2011 WL 379313 (D. Ariz. Feb. 2, 2011) ................. 30

*Powers v. Boston Cooper Corp.*,
  926 F.2d 109 (1st Cir. 1991) .................................................................................... 24

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
  223 Cal. App. 4th 1105 (2014) ................................................................................ 27

*Santagate v. Tower,*
    64 Mass App. Ct. 324 (2005) ................................................................. 27

*Shum v. Intel Corp.,*
    499 F.3d 1272 (Fed. Cir. 2007) ...................................................... 11, 29

*Singh v. Blue Cross/Blue Shield of Mass., Inc.,*
    308 F.3d 25 (1st Cir. 2002) ................................................................. 28

*Spears v. Miller,*
    No. 1683, 2006 WL 2808145 (Mass. App. Sept. 26, 2006)................................. 26, 27

*Stark v. Advanced Magnetics, Inc.,*
    736 N.E.2d 434 (2000) ........................................................................ 13

*Stonyfield Farm, Inc. v. Agro-Farma, Inc.,*
    No. 08–CV–488–JL, 2009 WL 3255218 (D.N.H. Oct. 7, 2009) ...................... 16, 17

*Therasense, Inc. v. Becton Dickinson & Co.,*
    649 F.3d 1276 (Fed. Cir. 2011) ............................................................ 29

*United Mine Workers of Am. v. Gibbs,*
    383 U.S. 715 (1966) ............................................................................ 10

*Williams v. Wraxall,*
    33 Cal. App. 4th 120 (1995) ................................................................. 24

*Yerid v. Mason,*
    170 N.E. 2d 718 (Mass. 1960) ........................................................... 22, 23

*Youst v. Longo,*
    43 Cal. 3d 64 (1987)............................................................................ 28

## STATUTES

28 U.S.C. § 1367(a) ................................................................................. 2, 10

28 U.S.C. § 1367(c)(1)–(2) ......................................................................... 10

28 U.S.C. 1367(c)(4) ................................................................................. 14

35 U.S.C. § 256 .................................................................................... 28, 29

Cal. Code Civ. Proc. § 2019.210 ................................................................ 13

U.S.C. § 1331 ......................................................................................... 10

U.S.C. § 1338(a) ..................................................................................... 10

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 10

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 14, 20

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure

Defendants Zebra Enterprise Solutions Corporation, Zebra Technologies Corporation, and ZIH

Corp. (collectively, "Defendants" or "Zebra") hereby move to dismiss the Complaint filed by

Plaintiffs Lynx System Developers, Inc. and IsoLynx, LLC (collectively, "Plaintiffs" or "Lynx")

on the following grounds:  (1) the overwhelming majority of Lynx's causes of action are

supplemental state law claims that are distinct from, and predominate over, the few federal

causes of action and should therefore be dismissed for lack of subject matter jurisdiction; and (2)

none of Lynx's causes of action states a claim upon which relief can be granted.[1]

## I.   INTRODUCTION

For over a decade, Zebra has been a recognized leader in the research, design, and

development of innovative Radio Frequency Identification ("RFID") location tracking

technologies.  Such innovations require a substantial commitment to research and development,

and Zebra has invested millions of dollars bringing its technologies to customers in a wide

variety of industries, and has been awarded numerous patents for its inventions.  It was for this

reason that Lynx decided to purchase Zebra's cutting-edge products as the technical centerpiece

in its bid to provide the National Football League ("NFL") with a real-time player tracking

system for use during football games.

Despite the length of the Complaint and the numerous causes of action it purports to

assert, Lynx cannot identify a single coherent theory as to how Zebra harmed Lynx.  Lynx's own

Complaint makes clear that its failure is a product of its own making.  Lacking the resources and

technology to independently contract with the NFL, Lynx entered into an "exclusive"

---

[1] On August 20, 2015, Zebra filed a Complaint in the Superior Court for the County of
Santa Clara, California.  In doing so, Zebra seeks declaratory relief regarding the state law causes
of action Lynx asserted in its Complaint, which turn on questions of California law.

"Collaboration Agreement" with a third party, Sportvision, pursuant to which Lynx ███████

███████████████████████████████████████████. This ultimately cost Lynx a deal, not

only with Zebra, but with the NFL as well.  Once it became clear that a Zebra/Lynx partnership

was not feasible in light of the Lynx-Sportvision agreement, Zebra and Lynx parted ways.  Zebra

worked to independently test and develop its own player tracking technology until it was selected

over several competitors to be the NFL's official player tracking provider.  Having made its

choice to work with Sportvision, who did not secure an NFL deal, and having lost in the

competitive market, Lynx now resorts to litigation, bringing a bevy of California state law tort

and contract claims against Zebra in an improper attempt to blame Zebra for Lynx's own poor

business decisions.  That is no basis for an action against Zebra, and Lynx's state law-dominated

Complaint certainly does not belong in federal court.

Lynx's nine state-law claims—various strained attempts to allege trade secret

misappropriation, breach of contract, and other counts—should be dismissed for lack of subject

matter jurisdiction.  In an attempt to escape contractual choice of law and venue clauses it finds

unattractive, Lynx has combined contract, trade secret, and similar state law claims—which

make up the vast majority of the Complaint—with a handful of distinct allegations relating to

patent inventorship.  Lynx relies exclusively on supplemental jurisdiction under 28 U.S.C. §

1367(a) to tack those state law claims to the federal patent inventorship claims, but this is a case

of the tail wagging the dog.  This Court should not exercise supplemental jurisdiction where, as

here, Lynx's state-law claims predominate over the three federal claims, and are based on

distinct facts from the putative federal claims.  The federal claims (to the extent stated) relate

solely to the narrow issue of inventorship of Zebra's patents and patent applications, and are

factually distinct from the facts underlying the California claims.  Indeed, to the extent Lynx had

any properly pled claims (it does not), they would be more appropriately decided by a California court as the parties expressly agreed to the application of California law to any disputes arising out of their business relationship ███████████████████████████████.

Regardless of whether the Court exercises supplemental jurisdiction, none of the twelve causes of action are plausibly pled. Lynx's Complaint fails to make out even the barest factual assertions supporting any of its claims. As the Supreme Court and First Circuit have repeatedly made clear, notice pleading requires more. For these reasons, Zebra's motion to dismiss should be granted.

## II.   STATEMENT OF RELEVANT FACTS AS ALLEGED IN COMPLAINT

The following summarizes the facts as alleged in Lynx's Complaint. Zebra disputes many of these allegations, but summarizes them here for the Court's convenience, for purposes of the motion to dismiss.

### A.   Zebra's Innovative RFID Technologies, and Lynx's Need for Them

Zebra is a well-known manufacturer of RFID equipment used for location tracking. Zebra's technology spans many industries, including healthcare, retail, manufacturing, and transportation. *See* Dkt. 1 ("Compl.") ¶ 56; *see also* https://www.zebra.com/us/en/solutions.html. Acknowledging that Zebra is a worldwide leader in RFID location tracking technologies, Lynx purchased RFID tracking equipment from Zebra— specifically, Zebra's Dart RFID tracking system. (*Id.* ¶¶ 52–53.) Zebra's Dart system used tags and receivers to determine the position of personnel, inventory, equipment, and parts in factories and warehouses. (*Id.* ¶ 52.) All of this was ***Zebra's*** proprietary technology. (*Id.* ¶¶ 52–53.)

### B.   The IsoLynx System and Zebra's Real-Time Player Tracking Solutions

In 2004, Lynx initiated a project called IsoLynx to develop a real-time player tracking and data analysis system. (*Id.* ¶ 52) On September 30, 2009, Lynx and ZES executed a

Solutions Agreement pursuant to which Lynx purchased ZES's RFID technology.  (*Id.* ¶ 58.)

The Solutions Agreement, which is incorporated into the Complaint by reference,[2] expressly

states that ███████████████. (Ex. 3 (Solutions Agreement, filed under seal) §

13.11.)[3]  On December 22, 2009, Lynx and Zebra entered into an OEM[4] agreement under which

Lynx purchased Zebra Dart technology to be included in what Lynx called its "IsoLynx System,"

including Zebra's asset RFID tags, RF receivers, and high speed processing hubs ("OEM

Agreement").  (*Id.* ¶¶ 62–63.)  The OEM Agreement, which is incorporated into the Complaint

by reference, specifically provides that ████████████████████████

██████  (Ex. 1 (OEM Agreement, filed under seal) ¶ 18(f).)  Lynx alleges that Zebra

wrongfully terminated the Solutions and OEM Agreements by allegedly refusing to supply Lynx

with Dart components.  (*E.g.*, Compl. ¶¶ 241, 306.)

　　　In August 2010, Lynx and the NFL entered into a nondisclosure agreement so that the

NFL could consider using the IsoLynx System (which included Zebra's technology) to track

players in real-time and generate statistical data during football games.  (*Id.* ¶¶ 66–67.)  Lynx

tested the IsoLynx System at an NFL practice facility in October 2010.  (*Id.* ¶ 70.)  One year

later, the NFL contacted Lynx regarding the status of the IsoLynx System.  (*Id.* ¶ 72.)  Then,

during a 2012 game day test, the IsoLynx System did not function as intended.  (*Id.* ¶ 75.)  Lynx

---

[2]     *See, e.g., In re Celexa*, 751 F. Supp. 2d 277, 289 (D. Mass. 2010) (*citing Nollet v. Justices of the Trial Court of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) *aff'd*, 248 F.3d 1127 (1st Cir. 2000)) ("In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.").

[3]     Unless otherwise noted, all cited exhibits are to the supporting declaration of Sharre Lotfollahi, filed concurrently herewith.

[4]     Original Equipment Manufacturer.

contacted its technology supplier, Zebra, regarding the RF interference issues encountered during the test.  (*Id.* ¶ 76.)

On February 17, 2012, Zebra and Lynx entered into a confidentiality agreement ("Confidentiality Agreement") in order to "explore the possibility of a collaborative business relationship with one another."  (Compl. ¶ 82; Dkt. 1-1 at p. 1.)  ████████████████ ███████████, the Confidentiality Agreement, which is appended to the Complaint and incorporated by reference, states that "[n]othing in [the] Agreement shall be construed as creating any obligation on the part of either party to enter into a business relationship with the other party, or as creating any partnership or any other legal entity between the parties."  (Dkt. 1-1 ¶ 8.)  Lynx alleges that from February 2012 to January 2013, Lynx disclosed its "trade secrets" and other information relating to the IsoLynx System to Zebra under the Confidentiality Agreement.  (*E.g.* Compl. ¶¶ 95, 98, 101, 103, 116, 118, 121, 125, 129, 134, 151, and 168.) Lynx alleges that "[t]he IsoLynx System embodies inventions, trade secrets and other proprietary and confidential information and know-how . . . including at least the following:

> customized software, firmware and hardware that include RF filters, a data processing unit and data sanitizing algorithms to produce accurate player position coordinates in real time;

> custom-built computers for real-time data processing, broadcast quality networking and robotic camera control;

> a system of interrelated filtering algorithms that work together to improve the quality and accuracy of location data determined from tracked objects;

> modified UWB real-time location sensors that incorporate band pass filtering to immunize against interferers;

> modified UWB real-time location system tags that achieve a sufficiently low profile for mounting on sporting equipment;

> methods for mounting UWB real-time location system tags in American football players' shoulder pads;

> software tools for installing, operating, diagnosing and optimizing a UWB real-time location system in sporting venues;
>
> software tools for managing the team/player/tag/settings relationships in a sporting application;
>
> methods for real-time monitoring of UWB real-time location system accuracy to ensure data integrity; and
>
> know-how related to the positioning, installation and operation of a real-time player tracking and data analysis system."

(*Id.* ¶ 21.)  Lynx does not identify which of the above features of the IsoLynx System it contends constitute trade secrets, which particular "software" it is talking about, or which features it alleges were misappropriated by Zebra.

Less than one month after entering into the Confidentiality Agreement, Lynx approached Sportvision about partnering with Lynx on a deal with the NFL.  (*Id.* ¶ 104.)  On December 1, 2012, IsoLynx entered into the Collaboration Agreement with Sportvision (the "IsoLynx-Sportvision Collaboration Agreement"), which is incorporated into the Complaint by reference.  (*Id.* ¶ 144.)  As quoted in the Complaint, that agreement states that Sportvision would "act as IsoLynx's **exclusive** marketing and sales conduit. . . ."  (*Id.* ¶ 145;[5] *see also* Ex. 2 (IsoLynx-Sportvision Collaboration Agreement, filed under seal) at p. 1.)  Lynx sent Zebra a redacted copy of the IsoLynx-Sportvision Collaboration Agreement months later, on February 18, 2013.  (Compl. ¶ 195.)

In December 2012, the NFL requested a meeting with Zebra and Lynx.  (*Id.* ¶ 165.)  At Lynx's request, Sportvision was also invited to the meeting, which occurred on January 11, 2013.  (*Id.* ¶¶ 166–167, 171.)  From January to May 2013, Zebra allegedly told Lynx that Zebra would not provide a real-time player tracking system to the NFL without Lynx.  (*Id.* ¶¶ 174, 176,

---

[5]        Unless otherwise noted, all emphasis has been added.

230.)  The specific communications alleged by Lynx are as follows: (1) on January 29, 2013, Ms. Stelfox, a Zebra executive, allegedly promised Messrs. Evansen and DeAngelis (who are associated with Lynx) via telephone that Zebra would not provide a real time player tracking system to the NFL without Plaintiffs (*id*. ¶ 174); (2) on February 5, 2013, Ms. Stelfox allegedly told Mr. Evansen via telephone that cutting out Plaintiffs "would be the wrong thing to do" and it would "make no business sense to derail a train which is in full motion" (*id*. ¶ 176); (3) on March 29, 2013, Ms. Stelfox sent an email to Mr. Evansen assuring Plaintiffs "I still very much want to figure out a way to work together," and referring to "the conversation you and I had about the pieces IsoLynx wants to perform for the NFL," including Plaintiffs "helping support stadium prep, the black box, tagging the players and the camera application" (*id*. ¶ 219); and (4) on May 3, 2013, during a phone conversation with Mr. DeAngelis, Mr. Gustafsson (Zebra's CEO) allegedly denied that Zebra was excluding Plaintiffs from the business opportunity with NFL Enterprises, and allegedly promised that Zebra would try to give the NFL a solution that included IsoLynx (*id*. ¶ 230).

On April 18, 2013, Zebra sent a letter to Lynx terminating their contractual relationship. (*Id*. ¶¶ 221–22.)  Zebra also stopped supplying technology to be used in the IsoLynx System, and Lynx was allegedly unable to continue making that system.  (*Id*. ¶¶ 238, 240.)  Lynx alleges that Zebra wrongfully terminated the OEM and Solutions Agreements but does not allege such termination was a breach of the agreements' terms.  (*E.g.*, *Id*. ¶¶ 241, 306.)  Lynx also alleges that its inability to provide the IsoLynx System after Zebra terminated their relationship lead to the termination of the IsoLynx-Sportvision Collaboration Agreement in October 2013.  (*Id*. ¶ 241.)  Lynx does not identify who terminated its agreement with Sportvision.  Lynx also does not allege why it could not obtain RFID technology from a supplier other than Zebra, or why it

waited more than two years to complain about Zebra's termination of the Solutions and OEM Agreements.

### C.      Zebra's Patents and MotionWorks® Tracking System

Zebra's proprietary player tracking system, MotionWorks®, which includes Zebra RFID technology developed long before Zebra encountered Lynx, was installed and used for several NFL games starting in the 2013 NFL preseason.  (*Id*. ¶ 253.)  In July 2014, Zebra entered into a five-year agreement with the NFL under which Zebra became "The Official On-Field Player-Tracking Provider of the NFL."  (*Id*. ¶ 254.)  Under that agreement, the MotionWorks® system will be used in all 31 NFL stadiums, and Wembley Stadium in London, in the 2015 NFL regular season.  (*Id*.)  Lynx claims that Zebra's MotionWorks® system incorporates Lynx's trade secrets.  (*Id*. ¶ 3.)

On June 6, 2013, months after Lynx and Zebra went their separate ways, Zebra filed U.S. Provisional Patent Application No. 61/831,990, titled "Performance Analytics Based on Real-Time Data for Proximity and Movement of Objects," ("'990 provisional application").  (*Id*. ¶ 34.)  Zebra has obtained two U.S. patents based on the '990 provisional application, including U.S. Patent No. 8,989,880 ("'880 patent"), filed July 15, 2013, and issued March 24, 2015, and U.S. Patent No. 9,002,485 ("'485 patent"), filed July 15, 2013, and issued April 7, 2015.  (*Id*. ¶ 35.)  Lynx alleges that its employees should be named as inventors on Zebra's patents and that those patents improperly incorporate Lynx's inventions.  (*Id*. ¶¶ 362–365, 284.)  Lynx does not identify the "inventions" that Zebra allegedly incorporated into its patents, or how, if at all, those inventorship allegations relate to the contract and trade secret claims at the heart of Lynx's Complaint.

### D.    Choice of Law and Venue Provisions in the Zebra-Lynx Agreements

The OEM Agreement states that █████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 1 ¶ 18(g).) ███████████

████████████████████████████████████ (*Id.* ¶¶ 12(d), 18(g).)  The

Confidentiality Agreement, executed later between the parties, ██████ states that it "will be

governed by the substantive laws of the State of California."  (Dkt. 1-1 ¶ 10.)  The Solutions

Agreement ██████████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. 3 ¶¶ 11.2, 13.2.)

### E.    Lynx's Complaint and Asserted Subject Matter Jurisdiction

Lynx brought this action on June 10, 2015, asserting nine state law causes of action and

three federal causes of action.  Lynx's nine state law claims are as follows: Count I,

misappropriation of trade secrets; Count II, breach of the Confidentiality Agreement; Count III,

intentional interference with existing contractual and advantageous business relationships; Count

IV, fraud; Count V, breach of fiduciary duty; Count VI, unfair competition under Mass. Gen.

Law Ch. 93A; Count VII, unjust enrichment; Count VIII, conversion;  and Count IX, intentional

interference with prospective contractual and advantageous business and economic relationships.

Lynx's three federal claims are as follows: Count X, correction of inventorship of the '880 and

'485 patents; Count XI, declaration of unenforceability for inequitable conduct; and Count XII,

declaration of ownership of patents.

There is no complete diversity of citizenship between the Plaintiffs and Defendants; thus,

Lynx relies exclusively on subject matter jurisdiction over its federal law claims pursuant to 28

U.S.C. §§ 1331 and 1338(a) and on a request that the Court exercise supplemental jurisdiction over its state law claims pursuant to 28 U.S.C. § 1367(a).  (Compl. ¶ 49.)

### III.     ARGUMENT

#### A.     Lynx's State Law Claims (Counts I-IX) Should Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Lynx has invoked this Court's original jurisdiction based upon Counts X (correction of inventorship), XI (declaration of unenforceability for inequitable conduct), and XII (declaration of ownership of patents) because those claims purportedly arise under the United States patent laws.  (*Id*.)  For its nine state law claims, Lynx relies upon a request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  (*Id.*)  Because the state law claims substantially predominate over the federal claims, supplemental jurisdiction should not be exercised here.

The exercise of supplemental jurisdiction is only proper over claims that are "so related to claims in the action within such original jurisdiction that they form ***part of the same case or controversy***."  28 U.S.C. § 1367(a).  For an exercise of supplemental jurisdiction to be proper, state and federal law claims must derive from a "common nucleus of operative fact" such that one would "ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Even if the claims do share some common nucleus of operative fact, supplemental jurisdiction still should not be exercised where the state law claims substantially predominate over the federal claims, or where they raise complex issues of state law.  28 U.S.C. § 1367(c)(1)–(2).  Here, Lynx's state law claims qualify on all three grounds, as they (1) depend upon facts distinct from the federal claims; (2) clearly predominate over the Complaint; and (3) raise complex issues of state law.  Accordingly, the Court should not e xercise supplemental jurisdiction over them.

For the only recognized federal claim alleged by Lynx (correction of inventorship),[6] Lynx alleges that its employees contributed to the invention of certain limitations within claims 2, 8, 10 and 15 of the '880 patent and claims 1, 8 and 14 of the '485 patent.  (Compl. ¶ 364.)  The specific patent claim limitations at issue, as described in Lynx's Complaint, are "comparing [compare] the participant location data to formation models based at least in part on the participant role data and the field data" and "determining [determine] formation data based on the comparing the participant location data to the formation models."  (*Id.*)  Lynx's correction of inventorship claim will thus center on facts relating to who conceived of these very specific (and limited) features and when, and whether those particular features were disclosed by Lynx to the named inventors on the '880 and '485 patents.  *See Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007) ("[T]he facts surrounding the inventorship claim concern the degree of [plaintiff's] inventive contribution to the claimed inventions, which necessarily include, *inter alia*, when and where the claimed inventions were conceived, and by whom.").  The other two "federal" claims—declaration of ownership and inequitable conduct—are based on overlapping factual allegations.

Lynx's state law claims, by contrast, focus on the business dealings among the parties and certain third parties (Sportvision, NFL) and are much different and far broader than those involved in its patent-related claims.  Far from merely focusing on who invented certain limitations within certain claims of the '880 and '485 patents, all nine of Lynx's state law claims involve numerous other allegations regarding a wide variety of agreements, interactions, and third-party business relationships having ***nothing*** to do with those patents or the development of their inventions.  These facts include:

---

[6]     These latter two federal claims are not viable claims and should be dismissed, as set forth in detail below.

- The execution and performance of the agreements alleged by Lynx to be breached or wrongfully terminated, including the Confidentiality, OEM, and Solutions Agreements (*e.g.*, Compl. ¶¶, 291, 306, 353);

- The business relationships and interactions between Lynx and third-parties such as Sportvision and the NFL, which Lynx alleges that Zebra improperly interfered with (*e.g.*, *id.* ¶¶ 302-07, 310-322);

- Zebra's development and use of at least six technical categories alleged to be "trade secrets" that are not implicated by Lynx's federal claims (*id.* ¶ 236);

- Zebra's alleged promises to Lynx to include it in a deal with the NFL, which Lynx asserts form the basis for its fraud claim (*id.* ¶¶ 310-322).

These facts dwarf those at issue in the federal claims, making the exercise of supplemental jurisdiction inappropriate. *See Innovative Manpower Solutions, LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597, 621 (W.D. La. 2013) ("[S]ince five of the six claims asserted by Innovative arise under state law, it is clear that state law issues substantially predominate."); *Patent Category Grp. v. Time to Play Corp.*, No. 2:07-cv-06479-ABC-SS, Dkt. 64 (C.D. Cal. Mar. 5, 2008) (Ex. 4) at 5 (declining to exercise supplemental jurisdiction where "the state-law trade secrets and breach of contract claims not only would substantially predominate a trial in this case, but they would all but swallow Plaintiff's patent claims" and "would require substantially broader discovery and trial presentation").

Moreover, such facts have nothing to do with patent ownership, inventorship, or unenforceability, and as such Lynx's state law claims do not share a common nucleus of operative fact with its federal claims. Indeed, the state law claims will require extensive discovery from numerous parties and third-parties into a multitude of issues that are entirely unrelated to the patent inventorship issues of the federal claims. *Id.* In circumstances strikingly similar to those presented here, federal courts regularly find that the state law misappropriation claims and federal intellectual property claims ***do not*** share a common nucleus of operative fact, and refuse to exercise supplemental jurisdiction over the state law claims. "While there may be

12

some common background facts in the trade-secret dispute and the patent dispute, that factual

overlap does not necessarily mean that the two disputes share operative facts." *Gen. Protecht

*Grp., Inc. v. Leviton Mfg. Co.*, No. CIV 10–1020 JB/LFG, 2012 WL 1684573, at *17 (D.N.M.

May 12, 2012) (declining to exercise supplemental jurisdiction over trade secret

misappropriation claim where case was in its early stages and convenience, judicial economy,

and fairness disfavored supplemental jurisdiction, and trade secret dispute lacked sufficient

operative facts overlapping with patent dispute); *Stark v. Advanced Magnetics, Inc.*, 736 N.E.2d

434, 439–40 (2000) (though plaintiff argued that "each of the [state law] claims cannot be

resolved without deciding a substantial question of patent law, namely the inventorship of the

subject matter of the patents," the court held that the trade secret misappropriation claim was

"not dependent on a determination of patent law as a necessary element of its proof" and

properly heard in state court).

Lastly, Lynx's state law claims raise complex issues of California state civil procedure,

confirming that the exercise of supplemental jurisdiction should be declined.  Specifically,

application of California trade secrets law implicates Cal. Code Civ. Proc. § 2019.210, an

important California procedural provision requiring that the party alleging misappropriation

identify the trade secrets with reasonable particularity before any discovery relating to the trade

secrets can commence.  Thus, Lynx's trade secret claims will raise significant issues of

California law; these issues are more appropriately addressed in California state court, where

Zebra has filed suit to resolve the parties' dispute.[7] *See, e.g.*, *C & J Mgmt. Corp. v. Anderson*,

---

[7]        Contemporaneously with the filing of this motion, Zebra has filed an action for
declaratory relief in Superior Court for the County of Santa Clara, California because the
overwhelming majority of Lynx's claims invoke California law.  (Ex. 5 (Redacted Complaint for
Declaratory Relief filed in Superior Court for the County of Santa Clara, California)).  Also, 28

707 F. Supp. 2d 858, 863 (S.D. Iowa 2009) (court declined to exercise supplemental jurisdiction where ruling on trade secret claims would require ruling on novel issues of state law and weighing policy considerations).  For these reasons, Lynx's state law claims (Counts I–IX) should be dismissed for lack of subject matter jurisdiction.

> **B.     Even if the Court Exercises Supplemental Jurisdiction over Lynx's State Law Claims, Lynx's Complaint Should Be Dismissed for Failure to State a Claim Pursuant To Fed. R. Civ. P. 12(b)(6)**

The vast majority of Lynx's claims should independently be dismissed for failure to state a legally cognizable claim.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." *In re Celexa*, 751 F. Supp. 2d at 289 (internal citation omitted).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* (citing *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000)).  But the Court need not credit mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. *Id.*  A claim should be dismissed where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. *Id.* at 678–79.  As set forth below, Lynx has failed to state a claim for every claim but breach of contract.  These counts should be dismissed.

In determining whether to dismiss Lynx's state law claims under Rule 12(b)(6), a threshold issue is which state's law the Court should apply: California, where ZES is based and

U.S.C. 1367(c)(4) states that "in exceptional circumstances, there are other compelling reasons for declining jurisdiction" such as practical considerations.

the state law to which the parties agreed, or Massachusetts, where Lynx is based. *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005); *see also Diomed, Inc. v. Vascular Solutions, Inc.*, 417 F. Supp. 2d 137, 143 (D. Mass. 2006) (choice-of-law disputes "need only be resolved if an actual conflict exists.") (quotations omitted); *Fed. Home Loan Bank of Boston v. Ally Fin., Inc.*, No. 11-10952-GAO, 2013 WL 5466628, at *1-2 (D. Mass. Sept. 30, 2013) (performing choice-of-law analysis in deciding motion to dismiss).

This is not a distinction without a difference—under California law, which applies a version of the Uniform Trade Secret Act (the California UTSA or "CUTSA"), Counts IV–IX are preempted and can be readily dismissed without further proceedings. *Ophthalmic Research Assocs., Inc.*, No. CIV.A. 12-11371-RWZ, 2013 WL 2247584, at *4 (D. Mass. May 22, 2013) ("California has enacted a version of the Uniform Trade Secrets Act ('UTSA'); Massachusetts has not.  Under California's UTSA, claims for unfair competition are displaced when they rely on allegations of trade secret misappropriation."); *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) ("[S]ection 3426.7, subdivision (b), preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.") (quotations omitted).

Here, however, the choice of law determination is made easy because ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *require* the application of California law, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. And even if Massachusetts law applies, Lynx's claims fail to state cognizable claims, and should be dismissed.

### 1.    California law applies to Lynx's state law claims.

California law applies to Lynx's state law claims because the parties expressly agreed ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

 Dkt. 1-1 ¶ 10.)  First, in the Confidentiality Agreement—which underlies each of Lynx's

state law claims—Zebra and Lynx agreed that California law applies:

> This Agreement will be governed by ***the substantive laws of the State of California*** as such laws apply to contracts between California residents entered into and performed entirely within California.

(Dkt. 1-1 ¶ 10.)

Because all of Lynx's state law

claims relate to these three agreements, California law applies.  For example, Lynx's trade secret

misappropriation claim (Count I) and breach of contract claim (Count II) are rooted in Zebra's

alleged improper use of trade secrets in breach of the Confidentiality Agreement; therefore, the

choice of law provision in that contract controls.  (*E.g.*, Compl. ¶¶ 282, 283); *Stonyfield Farm,*

*Inc. v. Agro-Farma, Inc.*, No. 08–CV–488–JL, 2009 WL 3255218, at *5–6 (D.N.H. Oct. 7, 2009)

(applying choice-of-law specified in NDA because "[p]roving an intentional breach of the NDA

would get [plaintiff] most of the way, if not all the way, to recovery under its various tort claims"

and "the language of this particular NDA strongly suggests that the parties intended for" the

specified state's law to govern "tort claims relating to the misappropriation of confidential

information"); *see also Ophthalmic Research Assocs., Inc.*, 2013 WL 2247584, at *5 (contractual

choice of law provision "clearly implies an expectation that California law should regulate the

parties' commercial interactions").

Lynx's other claims are also based on Zebra's alleged breach of these agreements.  The

intentional interference with existing contractual relationships claim (Count III) alleges that

Zebra improperly refused "to supply Dart components under the . . . ZES-Lynx OEM

Agreement" (Compl. ¶ 306); the fraud claim (Count IV) alleges that "Zebra was secretly

engaged in the preparation to . . . ***convert and claim as Defendants' own intellectual property***

***Plaintiffs' inventions, trade secrets and other proprietary and confidential information*** and

know-how disclosed to Zebra in confidence [under the Confidentiality Agreement]" (*id.* ¶ 315);

the breach of fiduciary duty claim (Count V) alleges that "Zebra breached the fiduciary duties it

owed to Plaintiffs as a co-joint venture [sic] or partner by, for example: unlawfully ***disclosing,***

***using, and otherwise misappropriating Plaintiffs' Protected Information*** [received under the

Confidentiality Agreement]" (*id.* ¶ 326); the unfair competition claim (Count VI) alleges that

"Zebra has engaged in unfair or deceptive acts or trade practices" by "[f]or example . . .

***breach[ing] the Lynx-ZES Mutual Confidentiality Agreement***" (*id.* ¶ 330); the unjust

enrichment claim (Count VII) alleges that "Zebra improperly used and improperly disclosed the

Protected Information ***in a manner not authorized by the Lynx-ZES Mutual Confidentiality***

***Agreement***" (*id.* ¶ 338); the conversion claim (Count VIII) alleges that Zebra "***incorporate[ed]***

***Plaintiffs' inventions, trade secrets and other proprietary and confidential information*** and

know-how related to the IsoLynx System [received under the Confidentiality Agreement] into its

Zebra MotionWorks®real-time player tracking system without authorization" (*id.* ¶ 343); and the

intentional interference with prospective relationships claim (Count IX) alleges that "Zebra

engaged in wrongful conduct including . . . ***breach of the Lynx-ZES Mutual Confidentiality***

***Agreement*** [and] ***wrongful termination of the ZES-Lynx Solutions Agreement and the ZES-***

***Lynx OEM Agreement***" (*id.* ¶ 349).  California law therefore governs those claims as well.  *See*

*Stonyfield Farm*, 2009 WL 3255218, at *5; *Ophthalmic Research Assocs., Inc.*, 2013 WL

2247584, at *5.

The propriety of applying California law is further confirmed because Zebra Enterprise

Solutions, the entity that contracted with Lynx, and its VP/General Manager, Jill Stelfox, are

located in San Jose, California.  (Compl. ¶¶ 41, 93, 284); Ex. 6 (LinkedIn Profile of Jill Stelfox)

at 1; *EchoMail, Inc. v. Am. Express Co.*, 529 F. Supp. 2d 140, 146 (D. Mass. 2007).  Together

with California's strong interest in regulating its own businesses, these facts require application

of California law to Lynx's state law claims.  *See Ophthalmic Research Assocs., Inc.*, 2013 WL

2247584, at *5.

**2.      Under California trade secrets law, Counts V–IX are preempted.**

CUTSA "occupies the field of common law claims based on the misappropriation of a

trade secret."  *Jardin v. DATAllegro, Inc.*, No. 10–CV–2552–IEG (WVG), 2011 WL 3300152, at

*2 (S.D. Cal. Jul. 29, 2011) (internal quotation omitted).  For this reason, "CUTSA preempts all

claims resting on allegations of the misappropriation of confidential information."  *Id.*  "[T]o

avoid preemption, a claim must be based on more than the same nucleus of facts as a claim for

misappropriation of trade secrets."  *Id.* (internal quotations omitted).  If there is no material

distinction between the wrongful acts alleged in a CUTSA claim and that alleged in a different

claim, the other claim is preempted.  *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08CV1992–

MMA(POR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009).  Thus, to avoid preemption, a

claim must "retain sufficient independent facts" to be viable after the trade secret facts are

removed.  *Id.* at *12.  As set forth below, Counts V–IX are based upon the same nucleus of facts

as Lynx's trade secrets claim and should be dismissed as preempted.

**Breach of Fiduciary Duty (Count V):** Because Lynx's fiduciary duty claim rests on the

same facts as its trade secret claim, it is preempted.  Specifically, Lynx's breach of fiduciary duty

claim is based upon Zebra allegedly "unlawfully disclosing, using, and otherwise

misappropriating Plaintiffs' Protected Information for its own benefit…."  (Compl. ¶ 326.)

18

These are the same facts alleged in its trade secret misappropriation claim.  (*Compare id.* ¶ 280 *with* ¶ 326.)  When these trade secret facts are removed, Count V no longer alleges breach, causation, or injury—three of the required elements of a claim for breach of fiduciary duty.  *Gabriel Techs. Corp.*, 2009 WL 3326631, at *12.  Lynx's only remaining allegations are that Zebra had certain "discuss[ions]" with the NFL without Plaintiff's involvement, and "refus[ed] to supply components for use in the IsoLynx System."  (Compl. ¶ 326).  Lynx does not identify any way in which it was harmed or Zebra was enriched by these alleged actions, nor does it identify any agreement or obligation to involve Lynx in a deal with the NFL (a contractual obligation conspicuously missing from Lynx's Complaint) or supply components.  As such, this claim is preempted.

**Unfair Competition (Count VI):** Lynx alleges that Zebra "improperly use[d] Plaintiffs' Protected Information" and "took the IsoLynx System and Plaintiffs' innovations and technologies . . . for itself."  (Compl. ¶ 330.)  These allegations are nearly identical to those Lynx claims as trade secret misappropriation and are thus preempted.

**Unjust Enrichment (Count VII):** Lynx alleges that Zebra acquired and misused Lynx's Protected Information to its own benefit.  (*Compare* Compl. ¶¶ 280–84 *with* 338.)  This claim is thus preempted.

**Conversion (Count VIII):** Lynx's conversion claim is based on the same facts as its trade secret claim—*i.e.*, Zebra's alleged incorporation of its trade secrets and other confidential information into its MotionWorks® system and its patent applications.  (Compl. ¶¶ 343– 344.)  Lynx's conversion claim is thus preempted.  *Gabriel Techs. Corp.*, 2009 WL 3326631, at *12 (CUTSA preempted common law conversion claim alleging unlawful taking of confidential information "through [defendant's] patent filings and other acts.").

**Interference with Prospective Economic Advantage (Count IX):** This claim explicitly relies upon Zebra's alleged "misappropriation of Plaintiffs' inventions, trade secrets and other proprietary and confidential information and know-how" and "breach of the Lynx-ZES Mutual Confidentiality Agreement."  (Compl. ¶ 349.)  These alleged facts are identical to those Lynx relies on to support its trade secret claim.  (*Id.* ¶¶ 282–84.)

> 3.     **Lynx's trade secret claim (Count I) should be dismissed for failure to state a claim.**

Under both California and Massachusetts law, a plaintiff cannot plead a trade secret claim without specifically identifying (1) the alleged trade secret and (2) the alleged misappropriation.[8] *See, e.g.*, *Cambridge Internet Solutions, Inc. v. Avicon Group*, No. 99–1841, 1999 WL 959673, at *2 (Mass. Sup. Ct. Sept. 21, 1999) (plaintiff required to identify with "greater particularity" the allegedly misappropriated source code and work product where plaintiff claimed it was developed in its facilities); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252–53 (1968) (third amended complaint failed to state a trade secret claim where it lacked details concerning the types of processes claimed to be trade secrets).  A plaintiff must provide enough detail so that a defendant can "ascertain at least the boundaries within which the [trade] secret lies."  *Id.* at 253.

The Complaint fails to identify the boundaries of Lynx's alleged trade secrets.  It is not possible to discern from the generalized list of "inventions, trade secrets and other proprietary and confidential information and know-how" in the Complaint, which (if any) of those software, firmware, and hardware items make up the alleged trade secrets, let alone which were allegedly misappropriated by Zebra.  (Compl. ¶ 21.); *see Cambridge Internet Solutions, Inc.*, 1999 WL 959673, at *2  ("Where [plaintiff] should have knowledge of the particular documents and

_____

[8]     Although Zebra believes that California law should apply to each of Lynx's state law claims for the reasons set forth in detail above, it supports its Rule 12(b)(6) motion with both California and Massachusetts law where appropriate.

source codes at issue, it is appropriate for [plaintiff] to identify with greater particularity the specific [trade secret] it claims was misappropriated.")  Indeed, the list expressly includes items other than trade secrets, such as "inventions."  (Compl. ¶ 21)  Lynx's Complaint also fails to allege how its trade secrets were conveyed to Zebra or how they were incorporated into MotionWorks®.  Absent this information, Lynx's trade secret claim must be dismissed.  *See, e.g.*, *Cambridge Internet Solutions*, 1999 WL 959673, at *2.

### 4.    Lynx's intentional interference with contract claim (Count III) should be dismissed for failure to state a claim.

To state a claim for intentional interference with contract, Lynx must allege that Zebra induced ***a third party*** to breach an existing agreement with Lynx.  *Arbor Networks, Inc. v. Ronca,* No. 12–11322–FDS, 2012 WL 5610835, at *6 (D. Mass. Nov. 14, 2012) ("[T]o make out a claim for intentional interference with contractual relations, a plaintiff must set forth facts showing (1) he had a contract with a third party; (2) defendant knowingly induced ***the third party*** to break that contract; (3) defendant's interference was improper in motive or means; and (4) plaintiff was harmed by defendant's actions."); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) ("The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.").

Here, Lynx's claim relies exclusively on Zebra's conduct towards ***Lynx***, not any inducement of a ***third party*** to terminate a contract with Lynx: "Zebra purported to terminate ***ZES's agreements with Lynx*** and subsequently stopped supplying components that it had been

supplying for use in the IsoLynx System, specifically Dart components." (Compl. ¶ 306.)[9]

Because Zebra's alleged conduct was ***directed toward Lynx***, the Complaint does not plead the

required element of inducing a ***third party*** to breach an existing agreement. *See Pac. Gas &*

*Elec. Co.*, 50 Cal. 3d at 1126. Moreover, the Complaint does not allege that Zebra induced

***Sportvision*** to "break," "breach" or "disrupt" its contractual relationship with Lynx; rather, all

that is alleged is that "Plaintiffs' business and contractual relationships with Sportvision ***were***

***terminated*** in October 2013," without an explanation of why. (Compl. ¶ 307.) The Complaint

also is silent as to how the Lynx-Sportvision Collaboration Agreement economically benefitted

Lynx, or how its termination caused Lynx harm, instead stating only that its relationship with

Sportvision was "advantageous." (*Id.* ¶¶ 302–04); s*ee Pac. Gas & Elec. Co. v. Bear Stearns &*

*Co.*, 50 Cal. 3d at 1126. For these reasons, Count III should be dismissed.

### 5.    Lynx's fraud claim (Count IV) should be dismissed for failure to state a claim.

Lynx's fraud claim is based exclusively on allegedly fraudulent promises by Zebra to

include Lynx in any potential deals with the NFL. Such statements of future intent, however, are

not actionable as fraud. *See, e.g.*, *Yerid v. Mason*, 170 N.E. 2d 718, 720 (Mass. 1960); *Hills*

*Transp. Co. v. Sw. Forest Indus., Inc.*, 266 Cal. App. 2d 702, 708 (1968).

Specifically, Lynx alleges fraud based on (1) Ms. Stelfox's January 29, 2013 statement to

Messrs. Evansen and DeAngelis that "Zebra ***would not*** provide a real time player tracking

system to the NFL without Plaintiffs" (Compl. ¶ 174); (2) Ms. Stelfox's February 5, 2013

---

[9]    At best, Lynx's intentional interference with contract claim is nothing more than a
breach of contract claim for consequential damages. Taking the facts in the Complaint as true,
Zebra's only duty to supply components arose by agreement—failure to supply the components
would therefore be a breach of contract, not a tort. Contract claims are not eligible for punitive
damages. *DeRose v. Putnam Mgmt. Co., Inc.*, 496 N.E. 2d 428, 432 (Mass. 1986); *Miller v.*
*Nat'l Am. Life Ins. Co.*, 54 Cal. App. 3d 331, 336 (1976).

statement to Mr. Evansen that cutting Plaintiffs out of a deal with the NFL "*would be* the wrong

thing to do" and it *would* "make no business sense to derail a train which is in full motion" (*id.* ¶

176); (3) Ms. Stelfox's March 29, 2013 email to Mr. Evansen assuring Plaintiffs that "I still very

much *want to* figure out a way to work together" and referring to "the conversation you and I

had about the pieces IsoLynx *wants to* perform for the NFL" (*id.* ¶ 219); and (4) Mr.

Gustafsson's May 3, 2013 conversation with Mr. DeAngelis in which he denied that Zebra *was*

*excluding* Plaintiffs from the business opportunity with the NFL and stated that Zebra was *trying*

*to give* the NFL a solution that included IsoLynx (*id.* ¶ 230).

 Every one of the allegedly fraudulent statements is a promise by Zebra to include Lynx in

any future deals with the NFL.  But Zebra's stated intentions about what it wanted to or could do

in the future were not statements of material *fact*.  Accordingly, these statements cannot form the

basis of a fraud claim on the facts alleged.  *Yerid v. Mason*, 170 N.E. 2d at 720 ("false statements

of opinion, of conditions to exist in the future, or of matters promissory in nature are not

actionable.").  Indeed, Zebra had no legal obligation to include Lynx in a deal with the NFL.

The parties' Confidentiality Agreement explicitly states that the parties wished to "explore the

*possibility* of a collaborative business relationship with one another" (Dkt. 1-1 at p. 1) but that

"[n]othing in [the] Agreement shall be construed as creating any obligation on the part of either

party to enter into a business relationship with the other party, or as creating any partnership or

any other legal entity between the parties" (*id.* ¶ 8).  Although Lynx would undoubtedly prefer

that Zebra had an obligation to include Lynx in its dealings with the NFL, that was not the

bargain struck by the parties.

 Finally, Lynx's fraud claim should also be dismissed because Lynx has not and cannot

allege that the alleged misstatements proximately caused any injury.  *Demoulas v. Demoulas*

*Super Markets, Inc.*, No. 902927B, 1993 WL 818844, at *2 (Mass. Super. Ct. Nov. 29, 1993)

("[P]roximate cause is a necessary component of claims for . . . fraud . . . ."); *Powers v. Boston*

*Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991) ("[T]here can be no actionable claim unless

some cognizable harm flowed from the defendant's conduct."); *Williams v. Wraxall*, 33 Cal.

App. 4th 120, 132, (1995), *as modified on denial of reh'g* (Apr. 12, 1995) (*citing Garcia v.*

*Superior Court*, 50 Cal. 3d 728, 737 (1990) (A "complete causal relationship" between the fraud

or deceit and the plaintiff's damages is required.)).  Lynx never alleges, nor could it, that it

actually had the NFL business opportunity it claims to have lost.  (Compl. ¶ 322.)  The

Sportvision Collaboration Agreement that Lynx entered into in 2012 ██████████████████

████████████████████, and made Sportvision the "*exclusive* marketing and sales

conduit" for any deals.  (IsoLynx-Sportvision Collaboration Agreement at p. 1.)  Thus, Zebra's

statements about what it would do in the future could not have caused the alleged harm—loss of

the NFL opportunity—because Lynx never had that "opportunity" in the first place.

### 6. Lynx's breach of fiduciary duty claim (Count V) should be dismissed for failure to state a claim.

In order to sustain a claim for breach of fiduciary duty, a plaintiff must plead facts

sufficient to show "the existence of a fiduciary relationship, its breach, and damage proximately

caused by that breach." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68

Cal. App. 4th 445, 483 (1998), *as modified on denial of reh'g* (Jan. 6, 1999); *see also Keros v.*

*Mass. Mut. Life Ins. Co.*, 958 F. Supp. 2d 306, 310 (D. Mass. 2013), *appeal dismissed* (Jan. 27,

2014).  Partners and joint venturers owe fiduciary duties to each other; mere contracting parties

do not.  *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524, (2008) ("The existence of a fiduciary

duty here depends on whether the parties were in a joint venture with each other, since partners

or joint venturers have a fiduciary duty to act with the highest good faith towards each other

regarding affairs of the partnership or joint venture."); *Meehan v. Shaughnessy*, 535 N.E. 2d 1255, 1263–64 (Mass. 1989).

Lynx's conclusory allegation that Lynx and Zebra "were engaged in a joint venture or partnership," and as a result, they "owed fiduciary duties to each other," is insufficient to survive a motion to dismiss. (Compl. ¶¶ 324–25.) These allegations are bare legal conclusions, and Lynx has failed to allege the ***facts*** to support these conclusions—for instance, an agreement to share profits and losses, a joint interest in assets, and joint control over performance. *Meehan*, 535 N.E. 2d 1263–64; *Air Tech. Corp. v. Gen. Elec. Co.*, 199 N.E. 2d 538, 546–47 (Mass. 1964) (no joint venture where there was no sharing in the profits under contract, no joint interest in particular assets, and no joint control of performance).



The Zebra-Lynx ▮▮▮▮ identified in the Complaint show the opposite—*i.e.,* that Zebra and Lynx agreed their relationship ***was neither*** a partnership ***nor*** a joint venture. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Confidentiality Agreement ▮▮▮ provides that "***[n]othing in this Agreement shall be construed as*** creating any obligation on the part of either party to enter into a business relationship with the other party, or as ***creating any partnership or any other legal entity between the parties.***" (Dkt. 1-1 ¶ 8.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ leave no doubt that Lynx and Zebra were neither partners nor joint venturers and therefore, there was no fiduciary duty between them.

**7.    Lynx's unfair competition claim (Count VI) should be dismissed for failure to state a claim.**

If the Court finds that California law applies to Lynx's state law claims, Count VI must be dismissed because it is based upon Massachusetts law. *Ophthalmic Research Assocs.*, 2013 WL 2247584, at *4. If instead, Massachusetts' unfair competition law applies, Lynx must plead (1) a deceptive act or practice on the part of the defendant (2) an injury or loss suffered by the plaintiff and (3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury. *Gorbey ex rel. Maddox v. Am. Journal of Obstetrics & Gynecology*, 849 F. Supp. 2d 162, 165 (D. Mass. 2012) *aff'd sub nom. A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013).

Lynx's unfair competition claim relies on Zebra's alleged breach of the Confidentiality Agreement and its alleged "scheme . . . to cut out Plaintiffs from the business opportunities with the NFL and others." (Compl. ¶330.) However, "mere breach of contract does not constitute an unfair or deceptive trade practice . . . unless it rises to the level of 'commercial extortion' or a similar degree of culpable conduct." *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 40 (1st Cir. 2000) (citation omitted). Moreover, Lynx never alleges—nor could it allege—that it had an exclusive right to market and sell a real-time player tracking system to the NFL. Without such a right, even assuming Lynx's allegations are true, there was no NFL "opportunity" from which Lynx was unfairly "cut out" by Zebra. Accordingly, Lynx has not alleged factually adequate conduct by Zebra that was unfair or deceptive, and therefore its unfair competition claim should be dismissed.

**8.    Lynx's unjust enrichment claim (Count VII) should be dismissed for failure to state a claim.**

A claim of unjust enrichment is only available if the plaintiff lacks an adequate remedy at law. *Spears v. Miller*, No. 1683, 2006 WL 2808145, at *3 (Mass. App. Sept. 26, 2006) (citing

*Santagate v. Tower*, 64 Mass App. Ct. 324, 329 (2005) (unjust enrichment claim properly dismissed where plaintiffs' breach of contract claim against former employer was adequate to compensate them for unpaid wages)); *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1137 (2014), *as modified on denial of reh'g* (Feb. 27, 2014) ("Equitable principles govern, and the plaintiff must show the legal remedy is inadequate.").

Here, Lynx seeks a legal remedy in its breach of contract claim.  (Compl. ¶¶ 286–300.) As a result, Lynx cannot simultaneously pursue a claim of unjust enrichment.  *Spears*, 2006 WL 2808145, at *3; *Prakashpalan*, 223 Cal. App. 4th at 1137.

**9.     Lynx's conversion claim (Count VIII) should be dismissed for failure to state a claim.**

Common law conversion does not cover intangible property, such as patents and trade secrets.  *Blake v. Prof'l Coin Grading Serv*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012) (granting motion to dismiss conversion claim where plaintiff "claim[ed] conversion of trade secrets, intellectual property, royalties, and sale proceeds."); *IB Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 792 (2003) ("Conversion requires interference with tangible rather than intangible property.").  Lynx's conversion claim cannot survive a motion to dismiss because it is based exclusively on the taking of alleged intangible property.  (*E.g.*, Compl. ¶¶ 341–44.)

**10.     Lynx's interference with prospective economic advantage claim (Count IX) should be dismissed for failure to state a claim.**

To plead a claim for interference with prospective economic advantage, a plaintiff must allege that (1) it had a business relationship for economic benefit with a third party; (2) defendants knew of that relationship; (3) defendants interfered with that relationship through an improper motive or means; and (4) plaintiff's loss of the advantage resulted directly from the defendant's conduct.  *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 86 (D.

Mass. 2010); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).  Lynx

fails to allege adequate facts to support this claim.

Lynx has not sufficiently alleged any element of this claim because it cannot show that it

had any "business relationship" with the NFL, much less any reasonable expectancy of financial

benefit from such a relationship.  *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 48

(1st Cir. 2002) (must plead facts showing a "probable future business relationship anticipating a

reasonable expectancy of financial benefit") (internal quotations and citations omitted); *see also*

*Moving and Storage, Inc. v. Panayotov*, No. 12–12262–GAO, 2014 WL 949830, at *3 (D. Mass.

Mar. 12, 2014); *Youst v. Longo*, 43 Cal. 3d 64, 83 (1987).  Indeed, the facts Lynx does plead

suggest it had no reasonable expectancy of an NFL deal.  For example, Lynx admits to technical

hurdles in the development of IsoLynx (Compl. ¶ 75), and also ███████████████████████

████████████████████████████

Lynx also cannot show that Zebra used any improper means to interfere with any

business relationship Lynx had with the NFL.  There was no agreement requiring Zebra to work

together with Lynx on an NFL deal.  Lynx complains that Zebra allegedly "improperly"

terminated the OEM and Supply Agreements, but it does not explain why the termination was

improper.

Finally, Lynx cannot show causation because it has not alleged facts establishing that, but

for Zebra's actions, Lynx would have won the NFL deal.  This claim should be dismissed.

> **11.     Lynx's correction of inventorship claim (Count X) should be dismissed for failure to state a claim.**

Under 35 U.S.C. § 256, a court may, on application of all the parties and assignees, issue

a correction of inventorship where, through error, an inventor is not named in an issued patent

and such error arose without any deceptive intention on his part.  Lynx requests a correction of

inventorship because its employees allegedly contributed to the invention of certain limitations within claims 2, 8, 10 and 15 of the '880 patent and claims 1, 8 and 14 of the '485 patent. (Compl. ¶ 364.)  However, the Complaint is devoid of any mention of which specific Lynx employees allegedly invented which of these limitations, let alone any facts concerning the when/where/why of any alleged prior invention.  Such allegations are required for this claim. *See CardiAQ Valve Techs., Inc. v. Neovasc, Inc.*, 57 F. Supp. 3d 118, 123 (D. Mass. 2014) (dismissing inventorship where the plaintiff had not identified who was allegedly involved in co-inventing the disputed inventions).  Indeed, "the critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue." *Shum*, 499 F.3d at 1277 (citing *Ethicon v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  Lynx fails to make these allegations.

Lynx has also failed to give notice to all interested parties, as required under 35 U.S.C. § 256.  For example, at least one named inventor on the challenged patents, Michael Wohl, is no longer employed at Zebra and thus did not receive notice of this lawsuit when the Complaint was served on Zebra.  Therefore, Lynx's correction of inventorship claim should be dismissed because it has failed to fulfill the "one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard."  *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989).

### 12.   Lynx's inequitable conduct claim (Count XI) should be dismissed for failure to state a claim.

The Complaint seeks a declaration of unenforceability for inequitable conduct.  (Compl. ¶¶ 368–405.)  Inequitable conduct, however, is not an an offensive claim, but rather a defense to patent infringement.  *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).  A district court can exercise subject matter jurisdiction over a declaratory judgment

claim of inequitable conduct only where a patentee has asserted or threatened to assert the patents at issue. *Perryman v. Dorman*, No. CV–10–1800–PHX-FJM, 2011 WL 379313, at *4 (D. Ariz. Feb. 2, 2011); *MedImmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 965 (Fed. Cir. 2005). Zebra has neither asserted its patents against Lynx nor threatened an infringement action, and Lynx does not allege that it has. This claim should be dismissed.

### 13. Lynx's patent ownership claim (Count XII) should be dismissed for failure to state a claim.

There is no federal claim for a declaration of patent ownership because such claim presents no federal issue. *Krauser v. BioHorizons, Inc.*, 753 F.3d 1263, 1269 (Fed. Cir. 2014). The Federal Circuit has ruled that patent ownership does not depend on "inventorship or require resolution of any issue of patent law." *Id.*; *see also Jardin*, 2011 WL 3300152, at *6 ("Inventorship and ownership are separate issues. Inventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property.") (internal citations and quotations omitted). Lynx's patent ownership claim is really just a repackaging of its correction of inventorship claim. It has already alleged a claim for correction of inventorship, inadequately, and its patent ownership claim should also be dismissed.

## IV.   CONCLUSION

Because Lynx cannot cure the deficiencies in the Complaint through amendment, the Complaint should be dismissed with prejudice. For the reasons set forth above, Zebra respectfully requests that its motion to dismiss be granted.

Dated:  August 20, 2015

Respectfully submitted,

ZEBRA ENTERPRISE SOLUTIONS
CORPORATION,
ZEBRA TECHNOLOGIES
CORPORATION and ZIH CORP.

By their attorneys,

/s/   Peter E. Gelhaar
Peter E. Gelhaar (BBO# 188310)
Kelly A. Hoffman (BBO# 673409)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Tel:     (617) 720-2880
Fax:     (617) 720-3554

Adam R. Alper (*pro hac* pending)
adam.alper@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel:     (415) 439-1400
Fax:     (415) 439-1500

Michael W. De Vries (pro hac pending)
michael.devries@kirkland.com
Sharre Lotfollahi (pro hac pending)
sharre.lotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Tel:     (213) 680-8400
Fax:     (213) 680-8500

Amanda Hollis (pro hac pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel:     (312) 862-2000
Fax:     (312) 862-2200

## **LOCAL RULE 7.1 CERTIFICATION**

I hereby certify that counsel for Zebra conferred in good faith with counsel for Plaintiffs

in an effort to narrow or resolve the issues presented in this motion.

/s/  Kelly A. Hoffman
Kelly A. Hoffman

## <u>REQUEST FOR ORAL ARGUMENT</u>

Defendants believe that oral argument may assist the court and respectfully wish to be heard regarding their Motion to Dismiss.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the

registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies

will be sent to those indicated as non-registered participants on August 20, 2015.


<u>/s/ Kelly A. Hoffman</u>
Kelly A. Hoffman