UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-12297-GAO

LYNX SYSTEM DEVELOPERS, INC. and
ISOLYNX, LLC,
Plaintiffs,

v.

ZEBRA ENTERPRISE SOLUTIONS CORPORATION,
ZEBRA TECHNOLOGIES CORPORATION, and ZIH CORP.,
Defendants.

OPINION AND ORDER
March 28, 2018

O'TOOLE, D.J.

This case involves allegations of trade secret misappropriation, inequitable patent procurement, and various contract and common law claims arising from the parties' past business dealings. The gravamen of the complaint filed by the plaintiffs, Lynx System Developers, Inc. and IsoLynx, LLC (collectively "Lynx"), is that the defendants, Zebra Enterprise Solutions Corp., Zebra Technologies Corp., and ZIH Corp. (collectively "Zebra"), misappropriated Lynx's real-time player tracking technology and excluded Lynx from a subsequent deal with the National Football League ("NFL") for the use of that technology. Currently pending before the Court is Lynx's motion concerning three email documents that it alleges were improperly redacted by Zebra on the basis of attorney-client privilege.

**I.      Introduction**

The dispute stems from an exchange of email discovery in which Zebra produced email documents to Lynx in two digital formats; one of which was keyword searchable, the other not. Lynx eventually noticed three documents within this production that were inadvertently redacted

in one of the formats but not the other. This revealed statements that were purportedly subject to the attorney-client privilege. Pursuant to the parties' joint protective order, Lynx notified Zebra of the discrepancy and contested the assertion of privilege. In response, Zebra maintained that the privilege was applicable to these three emails and sought their return. Because the parties' were unable to resolve this matter by agreement, Lynx filed the present Motion to Remove Defendants' Improper Designation of Three Emails as Attorney-Client Privileged (dkt. no. 171).

The email documents have been identified as Exhibits A, B, and C, (Haan Decl., Exs. A–C (dkt. no. 178)), and submitted to the Court for in camera review. The communications at issue contain sensitive information, so I describe them in only as much detail as necessary to explain the rulings.

## II. The Attorney-Client Privilege

The purpose of the attorney-client privilege is to encourage "full and frank communication between attorneys and their clients," Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see F.D.I.C. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000) (citing Upjohn, 449 U.S. at 389), but the privilege is narrowly construed to accomplish that end, United States v. Nixon, 418 U.S. 683, 710 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."); accord In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003) ("[P]rivilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth.").[1]

---

[1] Although the parties' submissions do not address whether state or federal privilege law should apply to this dispute, they cite only federal cases. I do not disturb their implicit agreement that federal law controls. Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) ("When the parties agree on the substantive law that should govern, 'we may hold the parties to their plausible choice of law, whether or not that choice is correct.'").

2

The attorney-client privilege protects communications that satisfy the following criteria:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (citing 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev.1961)). These requirements apply with equal force to in-house attorneys, whose legal advice based on communications with corporate officers is protected, but whose general business advice is not. See Texaco P. R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995); Neelon v. Krueger, No. 12-cv-11198-IT, 2015 WL 4254017, at *4 (D. Mass. July 14, 2015). "Generally, disclosing attorney-client communications to a third party undermines the privilege." Cavallaro, 284 F.3d at 247 (citations omitted). Even communications that would otherwise be privileged may nevertheless become discoverable upon subsequent disclosure to a third party because it "destroys the confidentiality upon which the privilege is premised." Lluberes, 663 F.3d at 24 (quoting In re Keeper of Records, 348 F.3d at 22). But there are two qualifications of this general rule that are relevant in the present case.

The so-called "Kovel doctrine" extends the attorney-client privilege to include communication with a third party that is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Cavallaro, 284 F.3d at 247 (quoting United States v. Kovel, 296 F.2d 918, 922 (2d. Cir. 1961)).[2] This doctrine, however, is limited in two important respects. First, the sharing of otherwise privileged information with a third party must be more than "useful" or "convenient" to

---

[2] Although the First Circuit has never explicitly adopted Kovel, it has cited the case approvingly and implied that it would do so in the right circumstances. Lluberes, 663 F.3d at 24 n. 20.

the legal representation, but rather the third party's participation must be "nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." Id. at 249 (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 187 (4th ed. 2001)). Second, such third party communications must be made "for the purpose of obtaining legal advice from the lawyer." Id. at 247 (quoting Kovel, 296 F.2d at 922). As noted by the First Circuit, this exception is more likely to apply when the lawyer—as opposed to the client—is the one who hires the third party, but this alone is not dispositive. Cavallaro, 284 F.3d at 248.

Another potential qualification is the "functional equivalent" doctrine, which provides that certain third-party agents of corporate entities, such as consultants, can be considered the "functional equivalent" of corporate employees by virtue of their close connection to the corporate entity. In re Bieter Co., 16 F.3d 929, 938 (8th Cir. 1994). Categorizing certain third party agents as functionally equivalent to employees, in turn, allows communications between such agents and corporate counsel to fall within the scope of Upjohn, which protects communications between corporate employees and corporate counsel. United States v. Graf, 610 F.3d 1148, 1158–59 (9th Cir. 2010) (adopting the functional equivalent doctrine articulated in Bieter) (citing Upjohn, 449 U.S. at 390–94). In Bieter, where the Eighth Circuit established this doctrine, the court considered that the consultant had a longstanding relationship with the company, interacted with the principals on a daily basis, was intimately involved in the single objective for which the company was created, worked from the company office, was paid a monthly wage, and appeared at public meetings as its sole representative, leading to the court's ultimate conclusion that "[t]here was no principled basis to distinguish [the consultant's] role from that of an employee." Bieter, 16 F.3d at 934, 938.

As the party asserting the attorney-client privilege, Zebra bears the burden of establishing not only that the privilege applies to the communications at issue, but also that the privilege has not been waived. In re Keeper of Records, 348 F.3d at 22.

A. Exhibits A and C

Exhibits A and C both contain email communications between Zebra employees and non-employee consultants hired by Zebra to assist in its attempts to reach an agreement with the NFL for the use of its player tracking system. Exhibit A is a single email correspondence from a third-party consultant to Jill Stelfox, the vice president and general manager of Zebra's Location Solutions business unit, in which the consultant outlines her strategic approach to the NFL deal. The email is several paragraphs long but contains only three redactions of less than a sentence each. Exhibit C is a document containing an email chain between Stelfox and three different consultants who were also hired to assist Zebra in its dealings with the NFL. The chain contains three emails from the consultants, including two from the same consultant, both of which are redacted in full.

Lynx contends that any potential claim of privilege as to matters within Exhibits A and C is now foreclosed by Zebra's disclosure of these communications to non-attorney third-party consultants. Zebra concedes that these consultants are neither attorneys nor employees, but nevertheless asserts that these consultant communications are protected by the Kovel and/or functional equivalent doctrines, and therefore the privilege claim is not foreclosed.

Zebra, however, presents no persuasive legal analysis to support this contention, relying instead on post hoc representations that, at the time these communications occurred, its employees and attorneys intended for the conversations to be privileged. But simply intending for a communication to be privileged does not make it so, and neither clients nor lawyers can

retroactively create privilege where it did not previously exist, which is what Zebra attempts here. In short, there is no legal or factual basis for concluding that these consultants satisfied either of the abovementioned exceptions.[3]

The Kovel doctrine, as cited by Cavallaro, does not apply to any of the consultants in these emails. First, the communications are plainly not for the purposes of obtaining legal advice. It is undisputed that these consultants were hired by Zebra to provide it with business advice concerning its potential opportunity with the NFL. This is evident upon reading the redacted portions of the Exhibits and the consulting agreements. (See Cheng Decl., Exs. 1, 2–4 (dkt. no. 189).) To the contrary, it seems quite clear that Zebra used these non-attorney consultants to double-check the legal advice it was receiving from its actual attorneys. Such communications are, by definition, not privileged. See Cavallaro, 284 F.3d at 249 (holding that accountants who "double-checked" legal advice and improved the quality of the lawyers' representation were not subject to protection under Kovel). As in Cavallaro, Zebra has simply failed to provide any contemporaneous documentation to suggest that these communications were for the purpose of obtaining legal advice from the lawyer, see 284 F.3d at 248–89, and the purpose requirement is not so elastic that it can encompass Zebra's collateral solicitations for advice from these consultants, see Kovel, 296 F.2d at 922 ("If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").

Nor has Zebra shown that these consultants were "nearly indispensable or serve[d] some specialized purpose in facilitating the attorney-client communications." Cavallaro, 284 F.3d at

---

[3] Zebra initially opposed Lynx's motion in all respects only to withdraw its opposition to Exhibit C shortly before the hearing on the matter. It did not address Exhibit C during the motion hearing except to suggest that the issue was moot and did not warrant a ruling from the Court. I decline Zebra's invitation to forgo ruling on this exhibit and address Exhibits A and C in tandem because they fail to satisfy either doctrine for the same reasons.

249. Third parties must do more than merely offer their advice and perspective, rather they must interpret or translate matters that are beyond the lawyer's reach or competence and would otherwise interfere with the attorney-client communications. See id.; United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999) ("because [the third party's] role was not as a translator or interpreter of client communications, the principle of Kovel does not shield his discussions"); see also Dahl v. Bain Capital Partners, LLC, 714 F. Supp. 2d 225, 228 (D. Mass. 2010) (holding communications not privileged because the attorneys "were not relying on [the third party] to translate or interpret information given to them by [the client]"). General business advice of the sort evident here is a paradigmatic example of what will not be protected by Kovel because it rarely, if ever, presents complex matters that are beyond the reach of an attorney and warrant the involvement of a third party. Cf. Crane Sec. Techs., Inc. v. Rolling Optics, AB, 230 F. Supp. 3d 10, 25 (D. Mass. 2017) (applying Kovel where third party was hired by the client's outside counsel and found to be "indispensable in the provision of legal advice" concerning a complex intellectual property licensing agreement).

Zebra's argument that the consultants are protected by the functional equivalent doctrine is similarly without merit or support. As an initial matter, I note that the doctrine has not been adopted within this Circuit or applied within this District. But even if that were not so, the cases are easily distinguishable. Notwithstanding Zebra's failure to provide any affirmative factual support for its contention, the documents before the Court suggest that these consultants are unlike Bieter because they did not have longstanding relationships with Zebra, were paid hourly, worked from their own locations, were not obligated to work exclusively for Zebra, and did not act as Zebra's sole representatives with respect to the matters being negotiated. The present facts are decidedly different from the facts considered by the Bieter court. See 16 F.3d at 934, 938.

7

I conclude that Zebra has waived any privilege within Exhibits A and C and that none of the consultants satisfy either exception to third party disclosure. Accordingly, the redactions to these exhibits are improper and must be removed.

B.  Exhibit B

Exhibit B is a collection of email communications between Zebra employees, including several of Zebra's in-house attorneys. The chain was initiated by Stelfox forwarding an email she had received which raised various legal issues, both explicitly and by implication. Stelfox forwarded this email to four Zebra employees: Hugh Gagnier, senior vice president of engineering and operations; and three in-house attorneys. The email chain includes three redacted responses to Stelfox's email; the first response from Gagnier, and two subsequent responses from in-house attorneys.

Lynx argues that these communications are not privileged because they are not, on their face, for the purposes of obtaining legal advice. Notwithstanding the presence of several attorneys on the email chain, it claims that the emails are discoverable because neither Stelfox nor Gagnier was explicitly seeking legal advice. But requests for legal advice may be implicit, Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 144 (D. Del. 1977), and it is of no consequence that Stelfox and Gagnier are not attorneys because they are high-level corporate employees seeking legal advice on matters related to their positions as such, see Upjohn, 449 U.S. at 389–90. This is not an instance where one attorney is copied on an otherwise discoverable email just to give "cover" for an otherwise unprivileged communication. The subsequent response from one of Zebra's in-house attorneys does, in fact, seem to provide legal perspective on the questions implicitly raised by Stelfox and Gagnier. In sum, this is a communication between two co-clients and three of their in-house attorneys concerning the company's legal matters.

8

I conclude that Exhibit B contains privileged communications and is properly redacted.[4]

### III. Conclusion

For the reasons stated, Lynx's Motion to Remove Defendants' Improper Designation of Three Emails as Attorney-Client Privileged (dkt. no. 171) is GRANTED with respect to Exhibits A and C and DENIED with respect to Exhibit B.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[4] All redactions apart from "Just in" are allowed.