IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNX SYSTEM DEVELOPERS, INC. and ISOLYNX, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ZEBRA ENTERPRISE SOLUTIONS CORPORATION, ZEBRA TECHNOLOGIES CORPORATION, and ZIH CORP., <br><br> Defendants. | Civil Action No. 1:15-cv-12297 (GAO) |

**PLAINTIFFS' RESPONSE TO ZEBRA'S NEW ARGUMENTS AT THE APRIL 11, 2018 STATUS HEARING IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO INTERROGATORIES NOS. 12-15 (DKT. NO. 217)**

On January 31, 2018, Zebra filed a motion to compel responses to Interrogatories Nos. 12-15. Dkt. No. 217. Plaintiffs filed a sealed opposition to the motion on February 14, 2018. Zebra did not request or file a reply.

The Court took up Zebra's motion to compel at the April 11, 2018 status hearing. Zebra's counsel used a 45-page slide deck in support of its arguments that Zebra's motion to compel should be granted. Specifically, in the slide deck, Zebra asserts that Plaintiffs must: 1) parse their trade secrets into "secret" and "public" portions; and 2) show the presence of each and every element of the asserted trade secrets in a Zebra product, system or service, like a patent owner must do in a patent infringement case. Zebra did not request that relief in its motion to compel.

As explained below, the new relief requested by Zebra is contrary to the law of trade secrets and, accordingly, should be denied.

## I.    PLAINTIFFS ARE NOT REQUIRED TO PARSE THEIR TRADE SECRETS INTO "SECRET" AND "PUBLIC" PORTIONS

During the April 11 status hearing, Zebra asserted, for the first time, that Plaintiffs are obligated to parse their trade secrets into "secret" portions and "public" portions (if any) in response to Interrogatory No. 15. *See* Dkt. No. 279, Decl. of Adam R. Alper ISO Zebra's Opp'n to Pls.' Mot. for Sanctions, Ex. 10 (Filed Under Seal); 4/11/2018 Hr'g Tr. at 47-50, 69-70; Zebra's Slide Deck at 2, 35-40 ("Does not describe what is secret"). This is contrary to the law of trade secrets.

A trade secret need not be novel, like a patent. As the First Circuit explained in *Atlantic Wool Combing Co. v. Norfolk Mills, Inc.*, in the context of asserted trade secrets for dehairing raw cashmere:

> What some other skilled person could or might have done is not controlling in this type of case, so long as the plaintiff did in fact design for its own exclusive use and withheld from general knowledge a new and different machine which embodied an economically valuable advance in the art and process of dehairing raw cashmere.
>
> *   *   *   *
>
> No more novelty or secrecy than these circumstances establish is needed to bring a proprietor's commercially valuable special knowledge within the area of legally protected trade secrets. In contrast, the court below seems to have reasoned that the plaintiff's modification of an old and familiar machine merited protection as a trade secret only if it disclosed something very close to patentable invention over the prior art. This was a mistaken view. "Novelty and invention are not requisite for a trade secret as they are for patentability. The protection is merely against breach of faith and reprehensible means of learning another's secret. For this limited protection it is not appropriate to require also the kind of novelty and invention which is a requisite for patentability." Restatement, Torts, § 757 comment b.
>
> *   *   *   *
>
> In particular application of this doctrine, the courts rather consistently impose liability on a proprietor of a business who employs unfair means, characterized by breach of confidence, to acquire otherwise undisclosed plans and specifications for a competitor's distinctive structure or machinery and uses them to produce a similar competitive device for his own use and to his competitor's economic detriment.

357 F.2d 866, 868-69 (1st Cir. 1965). *Accord Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972) ("Appellants argue that the plan was not 'novel.' The selling of 'pre-need' funerals was common; and appellee took many of the elements of his plan from the plans of others. However, 'novelty and invention are not requisite for a trade secret.' Restatement of Torts, § 757, Comment b, pp. 6-7. No more is required than that the information possess a qualified secrecy.").

"[I]t is widely accepted that a trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain.*" Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 9 (D.D.C. 2004); *see also Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 613 (5th Cir. 2011) ("We have specifically rejected the contention that a combination of disclosed technologies cannot itself constitute a trade secret."); *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 411 (6th Cir. 2006) ("[T]he design drawings here are properly considered trade secrets even though they contain a mixture of secret information (e.g., dimensions, tolerances, and data-reference points) and non-secret information."); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 449, 454-55 (D. Mass. 2017) (rejecting argument that trade secret was publicly known because defendants failed to explain how multiple public documents, which individually only disclosed aspects of the trade secret, "can be read together" as disclosing the full trade secret); *Monovis, Inc. v. Aquino*, 905 F. Supp. 1205, 1230 (W.D.N.Y. 1994) ("Even had the defendants succeeded in proving that all of the individual elements of information relating to [Plaintiffs'] technology were 'out there' in the public domain, they would still have had to explain why the synergistic combination of such elements into a unified whole [] should not be afforded trade secret protection.").

Courts have considered and rejected Zebra's position that a trade secret owner must divide documents that have been identified as trade secrets into "secret" and "public" portions. *See, e.g.*, *Mike's Train House*, 472 F.3d at 411 ("When material such as design drawings or manuals are

trade secrets based on a unique combination of both protected and unprotected material, a plaintiff should not be obligated to identify which components of the protected material is secret."); *3M v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001) (holding that plaintiffs were not obligated to divulge which specific information within their 500 pages of manuals (which included cleaning procedures, temperature settings, safety protocols, and equipment calibrations) was trade secret information, since the trade secret existed in the unified process/unique combination of the information).

Thus, to the extent Zebra's motion requests that Plaintiffs parse their trade secrets into "secret" and "public" portions in response to Interrogatory No. 15 or otherwise, the motion should be denied.

## II.   PLAINTIFFS ARE NOT REQUIRED TO SHOW THAT EACH "ELEMENT" OF A TRADE SECRET IS PRESENT IN A ZEBRA PRODUCT, SYSTEM OR PROCESS

During the April 11 status hearing, Zebra asserted that, to establish misappropriation of a trade secret, Plaintiffs must show that each "element" of the trade secret is present in a Zebra product, system or process in response to Interrogatory No. 14.  Zebra used color-coded claim charts – of the type used for infringement contentions in patent infringement cases – to argue that Lynx must apply each trade secret to the MotionWorks product on an element-by-element basis:

> But when you compare those quotes to the trade secret, you see that red box that I've created on the left in the trade secret? The things that they have quoted only match up to, at best here, three subcomponents of this overall trade secret. And there's a number of critical things to take away from this. Number one, if they were held to this disclosure, there would be an absolute failure of proof, right? Because they have a trade secret. It's got a bunch of components, and they've only pointed to three of those to show -- so that's not using the trade secret.

4/11/2018 Hr'g Tr. at 41; *see also* Zebra's Slide Deck at 26-30, 32-33.

Zebra even went so far as to assert that it will be entitled to summary judgment of no misappropriation where Lynx has "only shown where a couple of the pieces of the trade secret are in [Zebra's] documents." 4/11/2018 Hr'g Tr. at p. 43.

This speaks of patent infringement, not trade secret misappropriation. While patent infringement requires that each claim element, literally or by an equivalent, be present in an accused product, system or process, this is not a requirement for trade secret misappropriation. See *Mangren Research & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 944 (7th Cir. 1996). The Court recognized this at the April 11 status hearing (see 4/11/2018 Hr'g Tr. at 68-70), but it is worth reiterating, because Zebra persists in treating this case like a patent infringement case – which it is not.

To establish misappropriation of a trade secret, the trade secret owner need not establish that an accused product, system or process includes every part of the trade secret. Instead, ***misappropriation exists if a substantial portion of the trade secret was used***. *USM Corp. v. Marson Fastener Corp.*, 467 N.E.2d 1271, 1284 (Mass. 1984) ("Where a defendant constructs and uses a machine which is 'substantially a replica of the plaintiff's machine' incorporating a protected trade secret, the plaintiff is entitled to relief."); Restatement (Third) of Unfair Competition § 40, cmt. c ("The unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability."); *see also SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1197 (S.D. Cal. 2012) ("Histogen argues it has not misappropriated the…trade secrets because it does not use several of the claimed elements…. However, this argument misunderstands the law on this point. In the context of trade secret misappropriation, information may be improperly 'used' in that it is unlawfully acquired and then built upon or modified before being disclosed or benefit derived."); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1072-75 (N.D. Cal. 2005) (defendant liable

for trade secret misappropriation where less than all of the elements of the trade secret appeared in defendant's product because the defendant used the trade secret in the course of research and development efforts in furtherance of the product).

In fact, a trade secret may have been misappropriated even if it is not present in an accused product, system or process in any respect, because *misappropriation extends to the use of a substantial portion of the trade secret for manufacturing, production, research or development*. For example, in *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, the First Circuit affirmed the district court's judgment finding that the defendant used the plaintiff's trade secret because the defendant developed its product "far more quickly than otherwise would have been possible because it started with and proceeded from the knowledge" provided by the plaintiff's trade secret, and the defendant "used" the plaintiff's trade secret to obtain and test a sample and apply the test results to develop its own product. 210 F.3d 1, 12 (1st Cir. 2000).

And in *United Parcel Service v. Chandler*, the court held that using trade secrets in a patent application – as Plaintiffs allege was done by Zebra in this case – can constitute misappropriation. 1993 WL 21070, at *2 (D.N.J. Jan. 19, 1993).

Moreover, *misappropriation exists if a product, system or process is substantially derived from the protected information*. *Gen. Elec. Co. v. Sung*, 843 F. Supp. 776, 778 (D. Mass. 1994); *see also, e.g., In re Innovative Constr. Sys., Inc.*, 793 F.2d 875, 886-87 (7th Cir. 1986) ("[T]he user of another's trade secret is liable even if he uses it with modifications or improvements upon it effected by his own efforts, so long as the substance of the process used by the actor is derived from the other's secret. Were the law of trade secrets not flexible enough to reach the modifications in the instant case, when it is evident that the formulas were substantially derived from Innovative's, it would indeed be hollow."); *Am. Can Co. v. Mansukhai*, 742 F.2d 314, 328-29 (7th Cir. 1984) ("[A] party may not use another's trade secret even with independent improvements or

modifications so long as the product or process is substantially derived from the trade secret.");

*Superior Flux & Mfg. Co. v. H&S Indus., Inc.*, 1980 WL 30229, at \*2 (N.D. Ohio Nov. 20, 1980)

("Additionally, even if there are substantial differences, the use by H&S of trade secrets Hawkins

obtained while employed at Superior Flux in order to create new recipes amounts to a conversion

of the trade secrets, since, without the trade secret knowledge, Scott and Hawkins would have had

no starting place from which to formulate new recipes.").

> To summarize:
>
> There are no technical limitations on that nature of the conduct that constitutes "use" of a trade secret.... As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" …. Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret all constitute "use."

Restatement (Third) Unfair Competition § 40 cmt. c.

Thus, to the extent Zebra asserts in its motion that Plaintiffs are obligated to show the

presence of every portion of a trade secret in a Zebra product, system or service in response to

Interrogatory No. 14 or otherwise, Zebra's motion should be denied.

## III.    CONCLUSION

In its sealed February 14 opposition to Zebra's January 31 motion to compel, Lynx

explained why the relief that Zebra requested in its motion should be denied. For the foregoing

reasons, the new relief requested in Zebra's slide deck presented at the April 11 status hearing

should be denied as well.

Respectfully submitted,

*/s/David J. Sheikh*
David J. Sheikh dsheikh@leesheikh.com
Christopher J. Lee clee@leesheikh.com
Richard B. Megley, Jr. rmegley@leesheikh.com
Brian E. Haan bhaan@leesheikh.com
Joseph A. Culig jculig@leesheikh.com
Ashley E. LaValley  alavalley@leesheikh.com
LEE SHEIKH MEGLEY & HAAN
111 West Jackson Boulevard, Suite 2230
Chicago, Illinois 60604
Phone: 312.982.0070

William A. Scofield, Jr. (BBO# 448940)
wscofield@lathropgage.com
LATHROP & GAGE LLP
28 State Street, Suite 700
Boston, Massachusetts 02109
Phone: 857.300.4000

**Attorneys for Lynx System Developers, Inc. and IsoLynx, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 25, 2018 the foregoing

**PLAINTIFFS' RESPONSE TO ZEBRA'S NEW ARGUMENTS AT THE APRIL 11, 2018 STATUS HEARING IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO INTERROGATORIES NOS. 12-15 (DKT. NO. 217)**

was served upon the following counsel of record via electronic transmission to:

| | |
|---|---|
| Adam R. Alper (admitted *pro hac vice*)<br>adam.alper@kirkland.com<br>Eric Cheng (admitted *pro hac vice*)<br>eric.cheng@kirkland.com<br>Natalie Flechsig (admitted *pro hac vice*)<br>Natalie.flechsig@kirkland.com<br>KIRKLAND & ELLIS, LLP<br>555 California Street, 27th Floor<br>San Francisco, CA 94104<br>Telephone:  415-439-1400/Fax:  415-439-1500<br><br>Michael W. De Vries (admitted *pro hac vice*)<br>michael.devries@kirkland.com<br>Sharre S. Lotfollahi (admitted *pro hac vice*)<br>sharre.lotfollahi@kirkland.com<br>Benjamin Yaghoubian (admitted *pro hac vice*)<br>Benjamin.yaghoubian@kirkland.com<br>KIRKLAND & ELLIS, LLP<br>333 South Hope Street<br>Los Angeles, CA 90071<br>Telephone:  213-680-8400<br>Facsimile:  213-680-8500<br><br>Amanda Hollis<br>amanda.hollis@kirkland.com<br>KIRKLAND & ELLIS, LLP<br>300 North LaSalle Street<br>Chicago, IL 60654<br>Telephone:  312-862-2011<br>Facsimile:  312-862-2200 | Peter E. Gelhaar (BBO# 188310)<br>peg@dcglaw.com<br>DONNELLY, CONROY & GELHAAR, LLP<br>260 Franklin Street, Suite 1600<br>Boston, MA 02110<br>Telephone:  617-720-2880/Fax:   617-720-3554<br><br>Anthony C. Porcelli (aporcelli@polsinelli.com)<br>Andrew B. Cripe (acripe@polsinelli.com)<br>Rodney L. Lewis (rodneylewis@polsinelli.com)<br>Michael J. Lorden (mlorden@polsinelli.com)<br>Bryan M. Westhoff (bwesthoff@polsinelli.com)<br>POLSINELLI PC<br>150 N. Riverside Plaza, Suite 3000<br>Chicago, IL, 60606<br>Telephone:  312.819.1900/Fax:  312.819.1910<br><br>Todd C. Jacobs (tjacobs@bradleyriley.com)<br>Timothy J. Hill (thill@bradleyriley.com)<br>David M. Caves (dcaves@bradleyriley.com)<br>Ryan S. Fisher (rfisher@bradleyriley.com)<br>BRADLEY RILEY JACOBS PC<br>320 W. Ohio Street, Suite 3W<br>Chicago, IL 60654<br>Telephone:  312.281.0295<br><br>Alexander R. Zwillinger (arz@dcglaw.com)<br>DONNELLY, CONROY & GELHAAR, LLP<br>260 Franklin Street, Suite 1600<br>Boston, MA 02110<br>Telephone: 617.720.2880/Fax:  617.720.3554 |
| ***Attorneys for Defendants Zebra Enterprise Solutions Corporation,<br>Zebra Technologies Corporation and ZIH Corp.*** | |

/s/David J. Sheikh
LEE SHEIKH MEGLEY & HAAN

***Attorneys for Plaintiffs Lynx System Developers,
Inc. and IsoLynx, LLC***