UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-12297-GAO

LYNX SYSTEM DEVELOPERS, INC. and
ISOLYNX, LLC,
Plaintiffs,

v.

ZEBRA ENTERPRISE SOLUTIONS CORPORATION,
ZEBRA TECHNOLOGIES CORPORATION, and ZIH CORP.,
Defendants.

ORDER
July 25, 2018

O'TOOLE, D.J.

The parties in this trade secret misappropriation case have exchanged a volley of discovery motions. Pending before the court are two motions to compel and a motion for sanctions filed by the plaintiffs, Lynx System Developers, Inc. and IsoLynx, LLC (collectively "Lynx"), as well as a motion for protective order and motion to compel filed by the defendants, Zebra Enterprise Solutions Corp., Zebra Technologies Corp., and ZIH Corp. (collectively "Zebra").

**I.     Motions to Compel**

Zebra's motion to compel responses to its Interrogatory Nos. 12–15 (dkt. no. 217), and Lynx's motion to compel more complete responses to Interrogatory Nos. 2–3 (dkt. no. 284) are two sides of the same general dispute. Zebra Interrogatory Nos. 12 and 13 ask Lynx to provide information concerning when each of its alleged trade secrets was created, how they were disclosed to Zebra, and who was involved in the disclosure; Interrogatory No. 14 asks Lynx to identify, on a trade-secret-by-trade-secret basis, where and how each alleged secret is used or found within Zebra's technology; Interrogatory 15 asks Lynx to respond to Zebra's responses to Lynx

Interrogatory Nos. 2 and 3. The cross-motion to compel filed by Lynx seeks an order compelling Zebra to provide more complete responses to its Interrogatory Nos. 2 and 3.

Lynx Interrogatory No. 2 asks Zebra to identify documents supporting its contention that Lynx's trade secrets were generally or publicly known, while Interrogatory No. 3 asks Zebra to identify any of Zebra's own technology that it believes included Lynx's alleged trade secrets prior to the date on which Lynx's trade secrets were disclosed to Zebra (pursuant to the parties then-existing business arrangement). Zebra responded by referencing various public materials, and then asked Lynx, in Interrogatory No. 15, to describe on a trade-secret-by-trade-secret basis the differences (if any) between Lynx's alleged trade secrets and the examples of public disclosure cited by Zebra in response to Lynx Interrogatory Nos. 2 and 3.

### A. <u>Zebra's Motion to Compel Plaintiffs to Respond to Zebra Interrogatory Nos. 12–15 (dkt. no. 217)</u>

Zebra's Motion to Compel Plaintiffs to Respond to Zebra Interrogatory Nos. 12–15 (dkt. no. 217) is DENIED with respect to each interrogatory insofar as it seeks (1) to compel Lynx to provide element-by-element responses to these interrogatories, or identify which specific elements of the trade secrets it contends was secret versus public; or (2) to bind Lynx to its current disclosures by prohibiting further supplementing of its responses. As discussed by Lynx in its supplemental response to this motion, (<u>see</u> Pls.' Suppl. Resp. to Defs.' Mot. to Compel (dkt. no. 290)), the element-by-element responses generally required for patent infringement claims are not applicable to this trade secrets case. Further, neither Lynx nor Zebra is bound to their respective responses at this early stage in the case, prior to the commencement of expert discovery. They are permitted to supplement their responses moving forward, and must do so as otherwise required by the Federal Rules.

2

Apart from the issues addressed above, the parties expressed their agreement during the April and May status conferences to confer on the other, less significant issues raised by Zebra in its papers and during oral arguments. They are now directed to confer on these matters and resolve any outstanding disagreements in light of this order.

B.  Lynx's Motion to Compel Defendants to Provide Complete Responses to Plaintiffs' Interrogatory Nos. 2 and 3 (dkt. no. 284)

Lynx's Motion to Compel Defendants to Provide Complete Responses to Plaintiffs' Interrogatory Nos. 2 and 3 (dkt. no. 284) is GRANTED in light of Zebra's agreement to supplement its responses to these interrogatories during the May 16 status conference. Lynx shall then supplement its own responses to Zebra Interrogatory No. 15 in a manner consistent with this order within thirty (30) days of Zebra's supplemented responses, unless the parties agree to a different timeframe.

## II. Lynx's Motion to Compel the Production of Technical and Financial Documents (dkt. no. 229)

Lynx's Motion to Compel the Production of Technical and Financial Documents (dkt. no. 229) is GRANTED with respect to the technical documents to the extent that these documents have not yet been fully produced. It is DENIED WITHOUT PREJUDICE to the extent that it seeks Zebra's negotiation documents related to the NFL negotiations. Zebra is ordered, however, to produce any formal offers exchanged between itself and the NFL, as well as any final agreement with the NFL if one is or has been reached.

## III. Zebra's Motion for Protective Order Quashing Notice of Deposition of Zebra's CEO (dkt. no. 271)

Zebra's Motion for Protective Order Quashing Notice of Deposition of Zebra's CEO (dkt. no. 271) is DENIED. Zebra's argument that the so-called "Apex Doctrine" protects its CEO, Anders Gustafsson, from being deposed by Lynx is plainly without merit. Unlike the executives

in the cases cited by Zebra, Gustafsson was more than just a figure-head who was otherwise uninvolved in the subject of the litigation. The emails submitted by Lynx in opposition to the protective order make clear that Gustafsson was active not only in Zebra's business dealings with Lynx but also in its negotiations with the NFL and other parties. (See Culig Decl., Exs. 4–5, 9, 13–14 (dkt. no. 300).) Lynx is accordingly entitled to depose Gustafsson. To the extent that Zebra requests an order that the subject matter of the deposition be limited to the telephone conversations he allegedly had with individuals at Lynx, that request is similarly DENIED.

## IV. Lynx's Motion for Sanctions and In Camera Review (dkt. no. 251)

Lynx moves for sanctions against Zebra's counsel for its allegedly vexatious conduct aimed to delay the litigation and unnecessarily increase Lynx's litigation expenses. The Federal Rules of Civil Procedure impose an obligation on "judges and lawyers to work cooperatively in controlling the expense and time demands of litigation." Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States (2015), https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf. When litigants fall short of this obligation, "a well-timed scowl from a trial judge can go a long way in moving things along crisply." Id. at 7.

Lynx's argument is not without some merit based on the history of this litigation. Zebra has, on several occasions, withheld materials requested by Lynx—leading to months of conferring and correspondence between the parties, a motion to compel from Lynx, and voluminous briefing on the motion, all at considerable expense—only to withdraw its opposition, or agree to produce the disputed documents just prior to a discovery motion hearing. Although the Court is not inclined to impose sanctions at this time, Zebra's counsel should consider this "a well-timed scowl." The

motion for sanctions is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge